## APPEAL OF D. E. ROBESON.

FROM THE DECREE OF THE COURT OF COMMON PLEAS OF MIFFLIN COUNTY.

Argued May 26, 1887—Decided January 3, 1888.

1. An encumbrancer having a lien upon but one of two funds has an equity to require a senior encumbrancer having a lien upon both, to exhaust the other of said sources first; and this equity may exist not only as against the debtor and the senior encumbrancer, but also against a mortgagee holding a junior lien upon the second fund alone.

2. The owner of a tract of land gave a judgment to A. and then a mortgage to B. The debtor subsequently acquiring another tract, A. by a revival of his judgment obtained a first lien on that tract, and the debtor then mortgaged this second tract to C. Upon a distribution of the proceeds of both tracts : *Held*, that C. having had record notice of the other liens, B. under his superior equity could require that the proceeds of the second tract should be applied to A.'s judgment in relief of his own lien upon the first. Hoff's App., 84 Pa. 42, distinguished.

Before GORDON, TRUNKEY, GREEN and CLARK, JJ.; MERCUR, C. J., and PAXSON, J., absent; STERRETT, J., not sitting. No. 84 July Term 1887, Sup. Ct.

On the distribution in the court below of the proceeds of a

Statement of Facts.

sheriff's sale of the real estate of W. R. Graham, a contest arose between D. E. Robeson and R. H. Myers, mortgage creditors. Two of the tracts were known, one the Hale tract, the other the Decatur tract. The Hale tract was conveyed to Graham April 1, 1864; the Decatur tract, August 26, 1875. .

At the time of the sheriff's sale, the Hale tract was subject to the lien of a purchase money mortgage, called here, for clearness, the Hale mortgage; certain judgments in favor of S. S. Woods' executor, and certain mortgages in favor of the Lewistown Building, Savings Fund and Loan Association, assigned to D. E. Robeson, called here the Robeson mortgages.

The judgments of Woods' executor had been revived after the purchase of the Decatur tract, and this tract at the time of said sale was subject to the lien of said judgments and of a mortgage to the Mifflin County Building, Savings Fund and Loan Association, assigned to R. H. Myers, called here, for clearness, the Myers mortgage.

The liens in the order of their priority at the distribution, as found by the auditor, *Mr. J. S. Rakerd,* in amount were as follows :

| | | |
|---|---|---|
| Upon the Hale tract, its proceeds being | | $3,810.00 |
| Hale purchase money mortgage, | $989.87 | |
| Woods' executor's judgment,[1] . | 940.34 | |
| Woods' executors' judgment,[2] . . | 379.28 | |
| Robeson mortgage,[3] . . . . . | 373.62 | |
| Robeson mortgage,[4] . . . . . . | 480.96 | |
| Robeson mortgage,[5] . . . . . | 300.00 | |
| Robeson mortgage,[6] . . . . . . | 590.00 | |
| Upon the Decatur tract, its proceeds being | | $1,080.00 |
| Woods' executor's judgment,[1] . . | $940.34 | |
| Woods' executor's judgment,[2] . . | 379.28 | |
| Myers mortgage,[7] . . . . . . | 632.91 | |

The auditor so finding, reported :

A. Reed, Esq., appearing for D. E. Robeson, Esq., trustee holding the mortgages of the Lewistown Building, Savings Fund and Loan Association on the Hale tract, claimed that the judgments of Woods' executor . . . . which have priority of lien on the Hale tract to the said mortgages, should be first appropriated to from the fund arising from the Decatur tract, because

Statement of Facts.

they were also the first lien on the said Decatur tract, and the Decatur tract was acquired after the Hale tract. The Loan Association mortgages were executed and entered on record from June 1, 1872, to May 25, 1875. The Woods judgments were liens prior to these mortgages. The Decatur township tract was acquired, Aug. 26, 1875. The Woods judgments by revival became a lien thereon Dec. 27, 1875. March 14, 1876, Wm. R. Graham mortgaged the Decatur township tract to the Mifflin County Building, Savings Fund and Loan Association, which mortgage was assigned to R. H. Myers. At the time the mortgages were taken on the Hale tract the mortgagees knew of the existence of the Woods judgments. In order to continue the lien on the Hale tract the judgments were revived and the revival made them a lien on the Decatur township tract. It is claimed that because the Woods judgments are a lien on both tracts that they must be paid out of the proceeds of the tract on which they last became a lien.

This principle would work injustice to the mortgage creditor on the Decatur township tract. Your auditor is of the opinion that no principle of law or equity would support such a basis of distribution, and he is of opinion that distribution should be made to the Woods judgments after the payment of the Hale mortgage out of the proceeds of the sale of the Hale tract for such portions of said judgments as remain unpaid from the proceeds of the Decatur township tract after the payment of the Myers mortgage on the Decatur township tract, and on this principle the fund arising from the Decatur township tract and the Hale tract are distributed.

The distribution reported by the auditor was as follows:

| | | | |
|---|---|---|---|
| Proceeds of Hale tract . . . . | | | $3,810.00 |
| To share of costs of sale and audit . | $207.66 | | |
| Hale purchase money mortgage . | 989.87 | | |
| Woods' executor's judgment,[1] bal. | 653.67 | | |
| Woods' executor's judgment,[2] bal. | 263.74 | | |
| Robeson mortgage,[3] . . . . . | 373.62 | | |
| Robeson mortgage,[4] . . . . . . | 480.96 | | |
| Robeson mortgage,[5] . . . . . | 300.00 | | |
| Robeson mortgage,[6] on account . . | 540.48 | 3,810.00 | |
| Proceeds of Decatur tract . . . | | $1,080.00 | |

To share of costs of sale and audit . $ 44.88
 Myers mortgage[7] . . . . . . 632.91
 Woods' executor's judgment,[1] on
  account, . . . . . . . . . 286.67
 Woods' executor's judgment,[2] on
  account, . . . . . . . . . 115.54 1,080.00

To this report, D. E. Robeson filed exceptions, (1) that the
auditor erred in not distributing the fund arising from the
Decatur tract to the Woods' executor's judgments, they being
the first liens on the same; (2) the mortgages of the except-
ant being first given have a higher equity than those given
afterwards.

On argument of these exceptions, the court, J. C. BUCHER,
P. J., confirmed the distribution recommended by the auditor,
delivering the following opinion:

It is complained that the auditor should have appropriated
the fund arising from the sale of the Decatur farm to the mort-
gages of the Lewistown Building, Savings Fund and Loan
Association instead of to the mortgage of the Mifflin County
Building, Savings Fund and Loan Association now for the use
of R. H. Myers.

As to the appropriation made by the auditor to which com-
plaint is made, the contention is that the Woods judgments
. . . . . which were the second liens on the Hale farm, and
the first liens on the Decatur farm, having two funds for
payment, whilst the Lewistown Building, Savings Fund and
Loan Association mortgages had but one, that the Woods
judgments must be paid out of the Decatur farm, so that the
Lewistown Building, Savings Fund and Loan Association
mortgages would not be disappointed. But the Mifflin County
Building, Savings Fund and Loan Association, for the use of
R. H. Myers, had a mortgage on the Decatur farm for $632.91,
which was the second lien on the Decatur farm, and that
association had just the same equity to drive the Woods judg-
ments back to the Hale farm so that it would not be disap-
pointed, and thus the equities are in equilibrio, and there is
nothing to induce the law to interfere. In point of fact, how-
ever, the auditor did what he could for the Lewistown Build-

ing, Savings Fund and Loan Association mortgages, by using as much of the Decatur farm proceeds as would pay the Mifflin County Building, Savings Fund and Loan Association mortgage, and then applying the balance to the Woods judgments. Thus he applied $286.67 plus $115.54, or $402.21 to the latter judgments, the entire claim of the Woods judgments being $1,319.62, thus paying nearly one third of the Woods judgments out of the Decatur farm. It does not lie, therefore, in the mouth of the Lewistown Building, Savings Fund and Loan Association mortgages to complain that, after what has been done for them, the auditor refused to disappoint the Mifflin County Building, Savings Fund and Loan Association mortgage for the benefit of the former. The parties in interest had their positions on the record, and equity could do nothing for them without working injury to others equally meritorious. The rule is " that subrogation is never allowed where the equity of the party seeking it is no stronger than the equity of the party affected by it:" Knouf's App., 91 Pa. 78; McGinnis's App., 16 Pa. 445–9; Hoff's App., 84 Pa. 40; Lloyd v. Galbraith, 32 Pa. 103. Subrogation, says Justice SERGEANT in Ziegler v. Long, 2 W. 205, must be employed like all other rules of equity to the attainment of justice; it is not to be used to overthrow the equity of another person, and thus work injustice.

The exceptant thereupon took this writ, assigning for error the dismissal of his exceptions and the order confirming the distribution recommended by the auditor.

*Mr. Andrew Reed*, for the appellant:

1. Before Myers took his mortgage, the record showed that the two Woods judgments were already liens on the Decatur tract on which he proposed to place it. The record showed, also, that these judgments were liens on the Hale tract, and that the mortgages of Robeson had also been entered on the Hale tract. Robeson, having a lien only on the Hale tract, and the Woods judgments being liens on both the Hale and Decatur tracts, could in equity require the Woods judgments to be first paid out of the Decatur tract before resorting to the Hale tract: Ramsey's App., 2 W. 228; Lathrop's App., 1 Pa. 512; McDevitt's App., 70 Pa. 373; Horning's App., 90 Pa. 388.

2. This is not a case of subrogation. It is a question of distribution. The claims are not in equilibrio. Myers was affected with a knowledge of Robeson's equity when he obtained his mortgage. It is settled that where mortgaged land is sold in pieces and at different times, the several pieces are liable in the inverse order of their alienation: Nailer v. Stanley, 10 S. & R. 450; Cowden's App., 1 Pa. 267; Becker v. Kehr, 49 Pa. 223; Carpenter v. Koons, 20 Pa. 222; Fluck v. Replogle, 13 Pa. 405; Lloyd v. Galbraith, 32 Pa. 103; McDevitt's App., 70 Pa. 377.

*Mr. Rufus C. Elder (Mr. George W. Elder* with him), for the appellee:

1. Robeson took his securities with the Woods judgments as a prior lien. The subsequent acquisition of property by Graham was due to no act by him. The rule which gives a separate creditor the exclusive enjoyment of his own peculiar fund is founded in benevolence, and will be regulated by the nicest principles of justice, for which reason it will not be enforced to cast the debt on one who is but surety or is not otherwise bound to bear it: Miller v. Jacobs, 3 W. 477; McGinnis's App., 16 Pa. 448.

2. Robeson has no equity to look to property not owned by Graham when his mortgages were taken, and which was not bound to others as security for their liens: Hoff's App., 84 Pa. 42; Mott v. Clark, 9 Pa. 404; Lancaster v. Dolan, 1 R. 245; Britton's App., 45 Pa. 172; Grevemeyer v. Insurance Co., 62 Pa. 343; Carpenter v. Koons, 20 Pa. 222. This case is ruled by Hoff's App., supra.

OPINION, MR. JUSTICE CLARK:

This case is to be determined upon the general principles of equity which govern in the marshaling of assets or in subrogation. The doctrine of subrogation is of purely equitable origin; its application is always controlled for the promotion of justice; it will never be enforced therefore to defeat a superior or even an equal equity in another. That this is the rule which governs in all cases of subrogation, is, of course, unquestioned. What are the respective rights and equities of the parties to this appeal?

The Hale tract was conveyed to Graham April 1, 1864, The Hale mortgage of June 14, 1864, for $989.07, was the first, the S. S. Woods' executor's judgments, entered February 17, 1871, the second, and the appellants' mortgages, entered at various dates from June 1, 1871, to February 23, 1875, the third lien against it. The Decatur tract was conveyed to Graham August 26, 1875, which was several months after all of the above stated liens had been entered. The S. S. Woods' executor's judgments, however, by revival, became, on December 27, 1875, the first lien upon this tract, and the appellees' mortgage on March 14, 1876, the second lien. On the revival of the Woods judgments, therefore, Woods acquired a lien on both the Hale and the Decatur farms; on the former by virtue of the original entry, on the latter by virtue of the revival, whilst the appellants' mortgage remained a lien upon the Hale farm only. It is true that when the appellants' mortgage was entered Graham did not yet own the Decatur tract, and they could not therefore have placed any reliance upon this tract at that time as a means of satisfying the Woods judgments; but, after the purchase of the Decatur tract, and the revival of the Woods judgments, it is plain that Woods had a lien upon two funds, and the appellants upon one of them only, in the hands of a common debtor, for the payment of their respective claims. If the contest were one between the appellants and the debtor alone, can it be doubted that the appellants would in equity be entitled to have Woods resort to the proceeds of the Decatur tract in order that they might avail themselves of the proceeds of the Hale tract? As the equity is against the debtor himself, certainly he would not be allowed to insist upon a pro rata payment of the Woods judgments from the two funds respectively, in order that he might pocket part of the money.

But when the appellees subsequently recorded their mortgage upon the Decatur tract, it is contended that, as mortgagees, they acquired a lien, and that their equity was equal to that of the appellants; that the equities were in equilibrio. We do not think so. The appellants acquired against Graham, the mortgagor, the right to have his other lands, not included in the mortgage, applied first to the payment of the earlier judgments which were liens against them. This right it was

·not in the power of the mortgagor to defeat by confessing judgments to other creditors or by contracting subsequent debts. Bona fide purchasers, and perhaps mortgagees, might be unaffected by an equity of which they had no notice in fact: Hoff's App., 84 Pa. 42. But when the appellees took their mortgage they could plainly see that the Woods judgments were entered as the first liens against the Decatur tract, and that their mortgage in the regular course of distribution could not be paid, until these judgments were satisfied. It is true that it appeared by the records that the Woods judgments were liens also upon the Hale tract, but the same search would show the existence of the appellants' mortgage. The appellees, in the absence of proof to the contrary, will be presumed to have taken their mortgage with full knowledge of all the facts disclosed by the record, and would thus be affected with notice of all the equities, which, owing to the peculiar condition of the respective liens, the appellants had as against the Woods judgments.

This equity, we have said, was against the debtor; and it is equally such against his subsequent mortgage creditors, with notice, who can have no greater rights than the debtor had at the time the mortgage was given. This equity existed in favor of the appellants before the appellees acquired their lien; prior in tempore potior in jure. The appellees must be considered to have taken their mortgage subject to the prior equity of the appellants: McDevitt's and Hays's App., 70 Pa. 377; Hastings' Case, 10 W. 305. Hoff's App., supra, although somewhat similar in its facts, is readily distinguishable from the case at bar. In that case, Adams, a judgment creditor of Phillips, had a lien on two properties, whilst Hoff, a mortgagee, had a lien upon one property only of the same debtor. After these liens were entered, Phillips sold the property upon which the mortgage was not a lien, to Reiff. It will be observed that Reiff was a purchaser, not a mortgagee, and Phillips, under the implied covenant in his deed, was bound to make the title good to him; he was a bona fide purchaser for full consideration wholly paid, without notice in fact of the lien of the judgment. As subrogation is not of right, but is a mere benevolence, this court, under the special facts of that case, sustained the court below in setting aside a decree of

subrogation. Chief Justice AGNEW in that case said : "Phillips then stood in the relation of principal to Reiff, for by the covenant in his deed contained in the words, grant, bargain and sell, he was bound to Reiff to remove the incumbrance from his property. We have, therefore, the case of one, who, in fact, stands superior to a surety; who was a bona fide purchaser of the property for a full consideration; who had no knowledge in fact of the lien of Henrietta Adams' judgment; who owed no duty to Hoff; upon whose land Hoff had no legal claim, and from which the burthen of Henrietta Adams' judgment was removed by a legal extinguishment of her debt. It is clear, therefore, that Hoff has no equity which he can work out, except by displacing a bona fide purchaser, who is prior in time, superior in claim on Phillips, the common debtor, and who must lose all his money in case he is displaced. When he purchased, Hoff had no lien on his land, and no equity to look to property not owned by Phillips when Hoff took his mortgage, and which then was not bound to others as a security for their liens. It would not be pure benevolence to substitute him to the injury of Reiff."

In this case there was no covenant of title to be implied from the words of the mortgage; and in the absence of proof to the contrary, the appellees will be presumed to have known what was clearly exhibited to them by the record. We think the appellants, upon the plainest principles of justice and equity, would have been entitled to subrogation to the rights of Woods' executor against the Decatur tract, and if so, the distribution of the proceeds should now be made as if that had been done, which, in equity, ought to have been done.

The decree of the Common Pleas is reversed, and the record is remitted, in order that distribution may be made in accordance with this opinion, the appellees to pay the costs of this appeal.