Commonwealth, for use, *v.* Baldwin Brothers Company et al., Appellants.

Argued April 16, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

W. *Pitt Gifford,* of *Gunnison, Fish, Gifford & Chapin,* with him *William J. Carney,* for appellants.

*Lyman C. Shreve, of Shreve & Shreve,* with him *G. P. O'Connor,* for appellee.

OPINION BY KELLER, P. J., July 10, 1936:

This case is to be determined upon the general principles of equity which govern in subrogation. The doctrine of subrogation is of purely equitable origin. Its application is always controlled for the promotion of justice. It will never be enforced therefore to defeat a superior or even an equal equity in another: Robeson's App., 117 Pa. 628, 633, 12 A. 51; Royal Arcanum v. Cornelius, 198 Pa. 46, 50, 47 A. 1124.

The facts may be summarized as follows: On May 16, 1932 the Secretary of Highways of Pennsylvania awarded The Baldwin Brothers Company—hereinafter called Baldwin Company—a contract for the improvement of a section of highway in Erie County. Baldwin Company furnished a bond, with The Ohio Casualty Insurance Company—hereinafter called Ohio Company—as surety, for the faithful performance of the contract. By this bond, the contractor, Baldwin Company, and the surety, Ohio Company, also assumed liability for the payment of all persons furnishing material and performing labor in and about the said highway construction, including materials and labor furnished to sub-contractors. Baldwin Company sublet the contract for grading

to Frank J. Smith. It is not alleged that Baldwin Company is indebted to Smith, in any amount, under this subcontract. Smith became indebted to Emblem Oil Company—hereinafter called Emblem Company—for gasoline, oil, etc. used in the work of grading. Emblem Company, therefore, had two rights of action, or ways of enforcing its claim against Smith. It might proceed directly against Smith, obtain judgment for the amount of its claim, and levy upon and sell Smith's property in satisfaction of the judgment; or it might bring suit under the contractor's bond against Baldwin Company and its surety, Ohio Company. If it elected to take the second course, as Smith was primarily liable and Baldwin Company and Ohio Company were only secondarily liable, the latter on paying Emblem Company's claim against Smith would be entitled to be subrogated to any action, judgment or security held by the creditor against the principal or primary debtor, Smith. Being subrogated to Emblem Company's claim, they could, as use plaintiffs, obtain judgment against Smith and levy upon and sell any of his property in satisfaction of the claim. As quasi sureties paying Emblem's claim against Smith, they would stand in the shoes of the creditor and be entitled to recoupment or reimbursement from Smith, the principal or primary debtor.

Emblem Company elected to proceed first against Smith. It issued a foreign attachment in assumpsit—Smith was a nonresident of Pennsylvania—and levied on a steam shovel, which The Osgood Company had sold to Smith, at Marion, Ohio, on October 12, 1928, under a conditional sale agreement. Osgood Company filed a property claim for the shovel, gave bond in the required amount, and was given possession of the shovel. An interpleader issue was framed, with Osgood Company as plaintiff, and Emblem Company and Smith as defendants, which resulted in a judgment for Emblem Company, for $1,600, the amount of its claim. See Osgood

Co. v. Emblem Oil Co., 111 Pa. Superior Ct. 38, 168 A. 515. The decision was based on the fact that Osgood Company had not fully complied with the provisions of the Conditional Sales Act and the shovel was therefore subject to execution and sale as Smith's property by his creditors. As respects such creditors title to the shovel had passed to Smith, however it may have been between the parties to the sale.

In the meantime, Emblem Company had secured judgment against Smith in the foreign attachment for the amount of its claim, and had also brought suit on the contractor's bond against Baldwin Company and its surety, Ohio Company.

Osgood Company having paid Emblem Company the amount of its judgment in the interpleader issue, took an assignment of the judgment against Smith and of Emblem Company's right and interest in the suit on the contractor's bond. It then filed a petition in said suit asking to be subrogated to Emblem Company's right of action against Baldwin Company and Ohio Company, and obtained a rule, which the court subsequently made absolute. The order must be reversed.

It is clear that if Osgood Company had not filed its property claim, given bond and obtained possession of the steam shovel in Smith's possession, Emblem Company would have obtained judgment and sold the shovel in satisfaction of its claim against Smith, and the claim being satisfied, all of Emblem Company's rights under the road contractor's bond would have been extinguished. Osgood Company had no rights, whatever, under the contractor's bond, and the sale of the steam shovel in satisfaction of Smith's debt would have given it none.

The fact that Osgood Company, under a mistaken view of its rights, filed a property claim, gave bond and took possession of the steam shovel, did not change the situation or give it any greater or higher rights than it would have had if it had made no claim. Certainly

its action in making the claim could not affect the rights of the attaching creditor or of those only secondarily liable for the debt. If its claim was without legal basis, it simply stood in Smith's shoes and was obliged to pay the creditor's claim, because it had given bond to do so if its claim was not sustained. And by reason of having done so, it had received into its possession *property of Smith,* of much more value than the creditor's claim, which would have been sold and applied in payment of Smith's debt, if the property claim had not been filed. It acquired, therefore, no new or additional rights as against Smith's creditor, or against those only secondarily liable for Smith's debt, by paying the judgment in the interpleader issue. The claim and judgment were, in effect, paid out of assets which were subject to a valid lien of the attaching creditor. The judgment was, so far as the attaching creditor was concerned, paid and satisfied by the attachment and levy on Smith's property.

It may well be that Osgood Company is entitled to be subrogated to any rights of action or securities which Emblem Company has against Smith, the primary debtor. But that is not the object of this proceeding. The appellee is not here seeking to be subrogated to any rights against Smith, the primary debtor. It is asking that it be subrogated to rights which Smith's creditor had against persons who owe Smith nothing and were only secondarily liable for Smith's debt. Payment of the debt by Smith, or out of his attached property, extinguished that liability and left nothing which could be assigned to appellee.

We repeat, Smith was the primary or principal debtor of Emblem Company. Baldwin Company and Ohio Company were only secondarily liable. They assumed liability if Smith did not pay. They occupied as respects Smith, the position of quasi sureties. This court held in Osgood v. Emblem Oil Co., supra, that the steam shovel was, as respects Emblem Oil Company's claim,

the property of Smith, subject to levy, execution and sale to satisfy Emblem Oil Company's claim. Payment by the principal debtor would have extinguished all rights of action growing out of the same claim against those secondarily liable. Payment of Emblem Company's claim, by Osgood Company, is, in reality, payment by the principal debtor, Smith, for the interpleader bond only took the place of the attached steam shovel, and the Osgood Company thereby got and retains possession of Smith's property which, otherwise, would have been sold to pay the claim. The claim having been paid, in effect, out of property belonging to Smith,— as respects his creditors—it is extinguished and cannot be kept alive by assignment, in order to recoup one standing in the primary debtor's shoes from those only secondarily liable for its payment. The equities of Baldwin Company and Ohio Company are at least equal with, if not superior to, those of Osgood Company and subrogation should not have been ordered. "The object of subrogation is to place a charge where it ought to rest, by compelling the payment of a debt by him who ought in equity to pay it. 'In short the doctrine of subrogation is that one who has been compelled to pay a debt which ought to have been paid by another is entitled to exercise all the remedies which the creditor possessed against that other, and to indemnity from the fund out of which should have been made the payment which he made': Sheldon on Subrogation, sec. 11. There can be no right of subrogation in one whose duty it is to pay, or in one claiming under him, against one who is secondarily liable......In such a case payment is extinguishment. Nor will subrogation ever be enforced where the equities are equal, or the rights not clear, nor to the prejudice of the legal or equitable rights of others": Royal Arcanum v. Cornelius, 198 Pa. 46, 50, 47 A. 1124. See also, Com. v. American Surety Co., 112 Pa. Superior Ct. 270, 170 A. 305, affirmed 315 Pa.

428, 172 A. 844; Sundheim v. Phila. School Dist., 311 Pa. 90, 166 A. 365.

We may illustrate by a supposititious case. Suppose A is injured by a fall on a defective sidewalk for which B, the owner and occupant of the premises is primarily liable, and C a municipality is secondarily liable. If A sues B and C in separate actions and recovers a judgment against B and levies on personal property of B, conditionally sold to him by D, who attempted, but ineffectively, to retain title as against B's creditors, neither B, nor D if he paid the judgment after a fruitless claim in interpleader proceedings, could ask to be subrogated to A's rights in the action against C; for C was only secondarily liable and if judgment had first been obtained against it, it would have been entitled to be subrogated to A's rights in the action against the principal debtor, B, and could, itself, have levied upon and sold as the property of B the goods sold to him by D, notwithstanding the fact that as between D and B the former retained title to them, for as respects creditors of B the title had passed to him. In such case the rights of D would be inferior to those of C and would not justify subrogation against C.

No more do the facts in the present case justify subrogation in favor of Osgood Company as against Baldwin Company and Ohio Company who were only secondarily liable for the payment of Emblem's claim against Smith—the debt or claim having been paid as the direct result of an attachment and levy against the principal debtor, Smith, and out of his property subject to such attachment and levy.

None of the cases relied on by the appellee or the court below deals with the state of facts here presented. They would be applicable if the appellee were asking to be subrogated to rights which the attaching creditor has against the primary debtor, Smith. They are not authority for the proposition that one only secondarily liable can be required, under the guise of subrogation,

to pay a debt of the primary debtor, which has been paid and extinguished by execution process issued against the latter's property, subject to execution and sale at the suit of his creditors.

The order is reversed and it is ordered that the rule for subrogation be dismissed at the costs of the appellee.