396 A.2d 1332

**ASSOCIATED HOSPITAL SERVICE OF PHILADELPHIA, Appellant in No. 1223,**

**v.**

**Alan PUSTILNIK, Appellant in No. 1136.**

Superior Court of Pennsylvania.

Argued Sept. 21, 1977.

Decided Jan. 19, 1979.

Petition for Allowance of Appeal Granted June 18, 1979.

604

Barry J. Goldstein, Philadelphia, for appellant at No. 1136 and for appellee at No. 1223.

Raymond T. Cullen, Philadelphia, for appellant at No. 1223 and for appellee at No. 1136.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

This case arises on cross appeals in an equity action. The issues raised involve the right of subrogation.

On May 27, 1968, Alan Pustilnik was injured when he was struck by a SEPTA subway car in Philadelphia. As a result of the accident, Pustilnik was hospitalized on three separate occasions. Medical bills accruing from these hospitalizations totalled $30,200.87, but Pustilnik was given a credit of $18,960.18 against this amount under the terms of his subscription agreement with Associated Hospital Service of Philadelphia (Blue Cross).

Soon after the accident, Pustilnik instituted suit against SEPTA. During pendency of this suit, Blue Cross notified Pustilnik and his attorney, Malcolm Waldron, of its subrogation interest in any recovery ultimately obtained from SEPTA. Blue Cross also invited Waldron to represent its interest in the suit in return for 25% of any recovery as an attorney's fee, or 33⅓% if the case went to trial. Waldron rejected this offer, demanding 50% of any recovery as a prerequisite for his representation of Blue Cross' interests. Blue Cross did not agree to pay this fee, but nevertheless continued to advise Waldron of its increasing subrogation interest as a result of Pustilnik's second and third hospitalizations.

Pustilnik's suit against SEPTA went to trial in May 1971. After the fifth day of trial, but before a verdict was returned, the parties settled the suit. Pustilnik agreed to take $235,000 in return for his release relieving SEPTA from additional liability. Upon learning of the settlement, Blue Cross, which did not participate in the trial, immediately alerted SEPTA and the trial judge of its subrogation claim. Eventually, when Pustilnik and Blue Cross were unable to agree on the size of Blue Cross' interest, the trial judge placed $30,000 of the settlement monies into an escrow fund. Thereafter, Blue Cross brought the present action in equity to obtain an adjudication governing the disbursement of the escrowed monies.

Trial was held in November 1975. At the close of the evidence, the court ruled that Blue Cross was entitled to subrogation for the amounts it spent on Pustilnik's behalf, but that it had not proved that it had paid $18,960.18, the amount credited against Pustilnik's hospital bills. The court found that although Blue Cross might have paid this sum, its proof failed to show with reasonable certainty that it had expended more than $16,721.64. The court therefore ruled that Blue Cross' subrogation recovery should be limited to this amount. The court further ruled that this amount was subject to the following additional deductions. First, finding that Pustilnik's $235,000 settlement was less than the full value of his personal injury claim, the court reduced Blue Cross' recovery by 50%. Next, the court reduced Blue Cross' recovery by another 40% to reflect its proportionate share of Waldron's attorney's fee. Finally, the court imposed a reduction of $120 to cover Blue Cross' share of the litigation expenses incurred by Waldron in the suit against SEPTA. Judgment was accordingly entered for Blue Cross in the amount of $4,889.49. Both parties filed exceptions to the court's adjudication, which were dismissed by an opinion and order dated February 15, 1977. Pustilnik and Blue Cross cross-appealed (in Nos. 1136 and 1223 October Term, 1977) to this court. The appeals have been consolidated, and will now be decided together.

–Pustilnik's Appeal–

 Pustilnik's principal argument is that Blue Cross erred in bringing its action in equity.[1] Included in Pustil-

1. Pustilnik makes three other arguments for reversal, which may be disposed of summarily. Pustilnik first argues that Blue Cross waived its subrogation rights when it failed to intervene in his suit against SEPTA or to institute its own separate action. Failure by a subrogee to intervene in a subrogor's suit against a third party tortfeasor has never been construed as a waiver by the subrogee of rights in any settlement or judgment secured by the subrogor from the tortfeasor. *See, e. g., Furia v. Philadelphia,* 180 Pa.Super. 50, 118 A.2d 236 (1955).

Pustilnik next argues that Blue Cross is barred from bringing suit against him under the doctrine of laches. Within a year from the date of the accident, and while Pustilnik's action against SEPTA was

nik's subscription agreement with Blue Cross was a provision setting forth Blue Cross' right to subrogation in any recovery obtained by Pustilnik from a third party on account of his injuries.[2] Pustilnik argues that this provision gave Blue Cross an adequate remedy at law.[3] We do not find these arguments persuasive.

pending, Blue Cross informed Pustilnik that it intended to assert its subrogation rights against any recovery he secured. After settlement was reached, and prior to the disbursement of any funds, Blue Cross informed SEPTA and the trial judge of its interest. Blue Cross instituted the present suit against Pustilnik in December 1972, well within the statute of limitation that would have applied had Blue Cross sued at law. *See First National Bank of Ashley v. Reily*, 165 Pa.Super. 168, 67 A.2d 679 (1949). Moreover, Pustilnik has not alleged how Blue Cross' actions prejudiced him. Under these circumstances, Blue Cross was not barred by laches from bringing this suit. *See generally, Silver v. Korr*, 392 Pa. 26, 30, 139 A.2d 552, 555 (1958) ("Laches arises when a defendant's position or rights are so prejudiced by length of time and inexcusable delay, plus attendant facts and circumstances, that it would be an injustice to permit presently the assertion of a claim against him.") (citation omitted).

Finally, Pustilnik argues that the trial court erred in refusing to condition Blue Cross' recovery upon proof of SEPTA's negligence. This argument is inconsistent with long-standing authority that a subrogee is not required to prove a third party's negligence in a suit to enforce its subrogation rights against the subrogor, when the subrogor brought and settled a previous action against the third party without obtaining a verdict. *Illinois Automobile Insurance Exchange v. Braun*, 280 Pa. 550, 124 A. 691 (1924); *Union Insurance Society, Ltd. v. Saller*, 95 Pa.Super. 41 (1928); *Commercial Casualty Insurance Co. v. Leebron*, 90 Pa.Super. 201 (1926); *Manley v. Montgomery Bus Co., Inc.*, 82 Pa.Super. 530 (1924).

2. Section XV of the Subscription Agreement entitled "Subrogation" provided:

In the event any hospital service or benefit is provided or any payment is made to a Subscriber under this Agreement, Blue Cross shall be subrogated and succeed to the Subscriber's rights of recovery therefor against any person or organization except against insurers on policies of insurance issued to and in the name of the Subscriber, and the Subscriber shall execute and deliver such instruments and take such other action as Blue Cross may require to secure such rights. The Subscriber shall do nothing to prejudice the rights given Blue Cross by this paragraph without its consent.

3. Pustilnik does not argue that Blue Cross' subrogation rights can exist only by virtue of the contractual provision allowing subrogation. Thus, our decision today is based upon the assumption that even in the absence of such a provision, Blue Cross would have a right to subrogation at law. We do not address the interesting issue

In *Potoczny v. Vallejo,* 170 Pa.Super. 377, 380–81, 85 A.2d 675, 677 (1952), this court said:

> The doctrine of subrogation is based "on considerations of equity and good conscience . . . to promote justice . . . [and] is granted as a means of placing the ultimate burden of the debt upon the person who should bear it." It is not a matter of contract nor of privity. It "may be invoked in favor of persons who are legally obligated to make good a loss caused by the negligent or tortious act of another." "It is a device adopted by equity to compel the ultimate discharge of an obligation by him who in good conscience ought to pay it."

(Footnotes and citations omitted.)

*See also Fell v. Johnston,* 154 Pa.Super. 470, 36 A.2d 227 (1943); *Commonwealth, for use, v. Baldwin Brothers Co.,* 122 Pa.Super. 403, 186 A. 242 (1936). A right to subrogation may be contractually declared, but even then the right is to be regarded as based on equitable principles, since the right of subrogation exists wholly apart from the contractual provision. *Roberts v. Fireman's Insurance Co. of Newark, New Jersey,* 376 Pa. 99, 101 A.2d 747 (1954); *First National Bank of Ashley v. Reily,* 165 Pa.Super. 168, 67 A.2d 679 (1949); 83 C.J.S. *Subrogation* § 3b ("A right of true legal subrogation may be provided for in a contract, but the

of whether Blue Cross' subscription agreement was in fact one for the indemnification of medical expenses, and if not, whether Blue Cross had a legal right to subrogation independent of the terms of the subrogation agreement. *See* Annot., 73 A.L.R.3d 1140, 1143 (1976) ("In the few cases that have been found dealing with the subject, no court has recognized the principle of legal subrogation as a basis for recoupment of benefits paid by a hospital or medical service organization . . . ."); *see* also *Morin v. Massachusetts Blue Cross, Inc.,* 365 Mass. 379, 383, 311 N.E.2d 914, 916 (1974) (raising the issue without deciding it); *Michigan Medical Service v. Sharpe,* 339 Mich. 574, 64 N.W.2d 713 (1954) (Blue Cross subscription agreement not contract for indemnity, therefore no right to subrogation exists outside the terms of the contract and suit for subrogation must be brought on law side of court). *But see* Justice Reid's strong dissent in *Michigan Hospital Service v. Sharpe,* 339 Mich. 357, 63 N.W.2d 638, 642 (1954), a companion case to *Michigan Medical Service, supra,* finding Blue Cross subscription agreement sufficiently analogous to indemnity contract to justify application of subrogation at law.

exercise of the right will, nevertheless, have its basis in general principles of equity rather than in the contract, which will be treated as being merely a declaration of principles of law already existing.") (footnotes omitted). Because Blue Cross' subrogation right existed in equity whether or not that right was recognized in its subscription agreement with Pustilnik, equity could hear Blue Cross' claim. By including a subrogation provision in the agreement, Blue Cross reserved the option to sue in assumpsit to secure subrogation, *see Roberts v. Fireman's Insurance Co. of Newark, New Jersey, supra,* but it did not forfeit its right to sue in equity. Older cases implying that an equitable action in subrogation will not lie when there is an adequate remedy at law are inapposite. *See* P.L.E., *Subrogation* § 2 (1958). *In Vogue Co. v. John C. Winston Co.,* 76 Pa.Super. 158 (1921), this court indicated, in *dictum,* that the plaintiff's subrogation was improperly pursued since he possessed a valid breach of warranty claim that would make whole his loss. Here, the only claim Blue Cross possessed was one for subrogation. Since subrogation is an equitable remedy, whether or not contractually declared, Blue Cross' action properly lay in equity.[4]

## –Blue Cross' Appeal–

 Blue Cross argues that it was entitled to $18,960.18, less a one third attorney's fee for Waldron, leaving a total recovery of $12,640.12. Blue Cross admits that it failed to prove at trial that it paid $18,960.18 on Pustilnik's behalf,

---

**4.** Pustilnik has also argued that by suing in equity, Blue Cross denied him his right to a jury trial. This argument, however, begs the question: If Blue Cross was entitled to sue in equity—as we have held it was—there could be no "denial" of a "right" to a jury. It may also be noted that Pa.R.C.P. 1513 gave Pustilnik the right to petition the trial court to submit any or all issues of fact to a trial by jury. The record indicates that Pustilnik failed to exercise his right. Since "[t]he main reason today for observing the [adequacy of law] test as a limit on equitable relief is that the plaintiff who gets his case into equity has foreclosed the possibility of a jury trial for the defendant," Dobbs, *Remedies* § 2.5 (1973), and since the same equitable principles control whether a subrogation suit is brought in equity or at law, Pustilnik has come forward with no reasons why equity requires remand for trial on the law side.

but it justified this failure on the ground that its manner of providing medical coverage makes such an exact calculation impossible.

Unlike profit-making insurance carriers, Blue Cross contracts directly with hospitals to provide services to its subscribers.[5] When a hospital under contract with Blue Cross provides services to a subscriber, it credits the subscriber's bill to the extent that it is covered by the subscriber's agreement with Blue Cross. Blue Cross then makes a partial, interim payment to the hospital on the basis of the hospital's bill to the subscriber. Final payment, however, is postponed until Blue Cross conducts its annual audit of the hospital's operations. At that time, all the hospital's costs are totalled, as well as all its charges to Blue Cross. If Blue Cross determines that some of the hospital's costs were unnecessary or resulted from waste, it deducts an appropriate amount from its yearly bill, and pays only the reduced amount. Because of this reimbursement system, which is based on generalized auditing procedures, Blue Cross was unable to isolate the exact amount it paid on account of Pustilnik's hospitalizations.

The trial court reasoned that "no subrogation can rise any higher than what the person paid out," and since Blue Cross did not show that it actually paid out the total amount credited on Pustilnik's bills, it was entitled only to a lesser sum. To illustrate the equity of its holding, the trial court used the following hypothetical example:

> Let us suppose an insurance carrier under its collision policy estimated the damage to a policyholder's car as $500.00 but only paid out $400.00 to a friendly repair shop to fix the car. Should such carrier be able to recover $500.00 because that was the value of the benefits rather than the $400.00 it actually paid out? We think not. Slip opinion at 11.

**5.** Not all hospitals, of course, have contracts with Blue Cross; but since Pustilnik was hospitalized only at hospitals that were under contract, we need not describe the reimbursement procedures used by Blue Cross for services provided hospitals not under contract.

The trial court's example does not accurately reflect the facts of the present case; it assumes that it was *Blue Cross* that initially "estimated the damage." However, it was *Pustilnik,* in his suit against SEPTA, who alleged that the face amount of his hospital bills stated the amount of special damages he had suffered as a result of the accident. Therefore, we do not have, as the trial court supposed, a situation where a subrogee sues a tortfeasor for the fair value of the services it provided the subrogor, even though it procured those services at less than fair value. Instead, we have a situation where the subrogor, after recovering from a tortfeasor an amount alleged by the subrogor to be the fair value of services provided by a subrogee, then refuses to hand over that amount to subrogee, assigning as the reason for the refusal the subrogee's inability to determine whether it actually paid that amount for the services. Equity will not allow such a result. The Restatement of Restitution § 162 states:

> Where property of one person is used in discharging an obligation owed by another . . . , under such circumstances that the other would be unjustly enriched by the retention of the benefit thus conferred, the former is entitled to be subrogated to the position of the obligee.
>
> . . .

*Cited with approval in Employers Mutual Liability Insurance Co. of Wisconsin v. Melcher,* 378 Pa. 598, 601, 107 A.2d 874, 876 (1954). To allow Pustilnik to gain a windfall by taking inconsistent positions in the two lawsuits would result in his unjust enrichment. Once he represented to SEPTA that the $18,960.18 represented the fair value of a part of his special damages, he could not then turn to Blue Cross and claim that the amount was inflated and his special damages were limited to a lesser sum.

 The trial court also erred in reducing Blue Cross' recovery by 50% on the ground that Pustilnik had settled with SEPTA for less than the full value of his claim. In *Illinois Automobile Insurance Exchange v. Braun,* 280 Pa. 550, 557–58, 124 A. 691, 693 (1924), the Supreme Court held

that when a subrogor settles instead of pressing his suit against an alleged tortfeasor to verdict, he cannot defeat a subrogee's claim by asserting that his loss exceeded the settlement recovery. Sound policy requires this result. It is of course possible that in some cases a subrogor will be well advised to settle for substantially less than his claim because of the tenuous proof establishing the alleged tortfeasor's liability. This possibility, however, does not imply that the subrogor should be permitted to assert against the subrogee that after all, his claim against the tortfeasor really was worth more than he had settled for—which is what the trial court permitted to happen here. Such a procedure would encourage unethical practice, if not perjured testimony: a representation in the court where the suit against the tort-feasor was tried that the case for liability was strong, to obtain a high settlement, followed by a representation in the court where the subrogation claim was tried that the case for liability was weak. Liability should be determined, whenever possible, in one proceeding. When a subrogor settles, he waives his right to a judicial determination of his losses, and conclusively establishes the settlement amount as full compensation for his damages.

The final issue concerns the propriety of the trial court's reduction of Blue Cross' recovery to reflect its proportionate share of the attorney's fee and litigation expenses involved in Pustilnik's suit against SEPTA. Pustilnik argues that the reductions were too small, Blue Cross, that they were too large.

█ In *Furia v. Philadelphia,* 180 Pa.Super. 50, 118 A.2d 236 (1955), we held that when a subrogor's attorney creates a common fund for the benefit of the subrogor and subro-gee, the attorney is entitled to reimbursement from the subrogee for its proportionate share of reasonable attorney's fees and litigation expenses. Here, therefore, Waldron is entitled to reimbursement from Blue Cross for a reasonable fee; since the parties failed to agree to a fee themselves, the court must determine what fee is reasonable.

Pustilnik argues that the fee should be set at 50% of Blue Cross' recovery, not because 50% is a reasonable fee, but because that is the fee he agreed to pay Waldron out of his recovery, and that is the fee that Waldron demanded of Blue Cross in return for his representation of its interests. Even if we assume that Pustilnik is the proper party to raise these contentions,[6] his argument must fail. Under *Furia,* Blue Cross is obligated to pay Waldron (or Pustilnik, if he has already discharged Blue Cross' share of Waldron's bill) only a reasonable attorney's fee (and a portion of proper litigation expenses). Blue Cross never agreed to pay more, and Pustilnik, in his dealings with Waldron, was powerless to obligate Blue Cross to pay more. If Pustilnik knew of Blue Cross' subrogation interest when he contracted with Waldron for his services, it was incumbent upon Pustilnik not to subject Blue Cross' portion of the recovery to an unreasonable attorney's fee. *Cf. Manley v. Montgomery Bus Co., Inc.,* 82 Pa.Super. 530 (1924) (when a subrogor initiates action against tortfeasor without subrogee's knowledge, subrogor stands as trustee with respect to subrogee). If Pustilnik did not know of Blue Cross' interest when he contracted with Waldron and unwittingly subjected Blue Cross' recovery to an unreasonable fee, there would appear to have been a mutual mistake of fact, and his contract with Waldron would lapse to the extent that the fee arrangement covered Blue Cross' portion of the recovery. In either instance, Blue Cross is bound to pay no more than what is reasonable.

Decisions involving an employer's subrogation rights in workmen's compensation cases do not compel a different result. In *Gold Star Service, Inc. v. Workmen's Compensation Appeal Board,* 21 Pa.Cmwlth. 1, 342 A.2d 459 (1975), the court held that where an employer knew of a disabled employee's action against a third party tortfeasor

---

**6.** The record does not show whether Pustilnik's agreement with Waldron obligated him to pay a fee based on the entire recovery regardless of Blue Cross' subrogation interest. However, since Blue Cross has not challenged Pustilnik's standing to raise the issue of attorney's fee, we shall assume that he is an interested party.

and participated in the distribution of settlement proceeds without questioning the reasonableness of the employee's fee to his attorney, the employer could not question the reasonableness at a later proceeding by the employee for an increase in his compensation payments. *See also Mazzeo v. M. & J. B. McHugh,* 199 Pa.Super. 400, 185 A.2d 638 (1962); I Barbieri, *Pennsylvania Workmen's Compensation* § 5.46(4). Here, however, Blue Cross informed both Pustilnik and Waldron during the pendency of the suit against SEPTA that it was willing to pay Waldron a contingency fee of only 25% to 33⅓%. Blue Cross never wavered from that position. Blue Cross, therefore, acted in a timely manner to protect its interest by giving Pustilnik notice of its opposition to a larger fee for Waldron.[7] Moreover, in workmen's compensation cases there is a strong public policy, expressed in statutes and the Pennsylvania Constitution, favoring the compensation of disabled employees by their former employers.[8] Courts have therefore been liberal in effectuating the workmen's compensation laws. *See* I Barbieri, *Pennsylvania Workmen's Compensation* § 2.08. No such considerations are present in the present case.

 Blue Cross argues that in allowing a fee of 40%, with a proportionate recovery of costs, the trial court allowed an unreasonable fee. We cannot say, however, that the trial court abused its discretion. Waldron testified that he had been in practice for twenty years, and that 60% to 70% of his work involved trespass actions. The suit against SEPTA was settled after five days of trial, and after Wal-

7. We note that although Pustilnik's actions by themselves could not bind Blue Cross to pay an unreasonable fee, had Blue Cross delayed for an unduly long period of time in notifying Pustilnik of its subrogation interest or of its intention to pay Waldron less than the fee Pustilnik had agreed to, Blue Cross' inaction might have estopped it from questioning the reasonableness of the fee in Pustilnik's agreement with Waldron. *Gold Star Service* and *Mazzeo* may very well control, for instance, in a case where the subrogee fails to inform the subrogor or his attorney of its interest until after the disposition of the subrogor's case against a third party.

8. *See, e. g.,* Preamble to the Act of Feb. 8, 1972, No. 12, P.L. 25, 77 P.S. 1 (2 Pa.B. 243); Pa.Const. Art. 3, § 18.

dron had completed his case-in-chief. Waldron gave fourteen pages of testimony on the nature of the action against SEPTA and the evidence he presented at trial. He stated, without cross-examination by Blue Cross, that he had sixty witnesses lined up for the case, that he spent a thousand hours in preparation, and that his usual hourly rate was $120. He also stated that he had to invest $5,800 in pre-trial preparations, and that Blue Cross denied all his requests to bear any costs involved in the case. We acknowledge that Waldron's proof of his litigation expenses of $5,800 was scanty, amounting to a mere statement without supporting proof. We believe, however, that Blue Cross could, and should, have protected itself, if it believed the statement inflated, by subpoenaing Waldron's records.

The judgment is set aside and the case remanded for further disposition in accordance with this opinion.

CERCONE, J., concurs in the result.

This decision was reached prior to the retirement of JACOBS, former President Judge.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.