230 N.J. Super. 55 (1989)
552 A.2d 644
COLONIAL PENN INSURANCE CO., A FOREIGN CORPORATION LICENSED TO DO BUSINESS IN NEW JERSEY, SUBROGEE OF JUNE M. CULLEN, PLAINTIFF-APPELLANT,
v.
RICHARD L. GIBSON, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 25, 1988.
Decided January 18, 1989.
*56 Before Judges DREIER and HAVEY.
William J. Vosper, Jr., argued the cause for appellant (William J. Vosper of counsel and on the brief).
Marie E. Lihotz argued the cause for respondent (Pluese & Lihotz, attorneys; Marie E. Lihotz on the brief).
The opinion of the court was delivered by HAVEY, J.A.D.
This appeal raises a choice-of-law question in deciding whether plaintiff, Colonial Penn Insurance Company (Colonial Penn), has a right of subrogation to recover against a tortfeasor underinsured motorist (UIM) payments made to Colonial Penn's insured. Specifically, the issue is whether Pennsylvania or New Jersey law applies where the UIM policy was written in *57 Pennsylvania and the accident, involving Pennsylvania residents, occurred in that state. The motion judge concluded that, since the tortfeasor, defendant Richard L. Gibson, moved to New Jersey after the accident and Colonial Penn's subrogation action against Gibson was instituted in this state, New Jersey law applies. The motion judge found that New Jersey's statutory and decisional law provides for no subrogation rights to recover UIM payments, and accordingly dismissed Colonial Penn's subrogation action against Gibson. We conclude that Pennsylvania law applies and that under that state's common law and the terms of the insurance contract, Colonial Penn has a subrogation right to recover UIM payments against a tortfeasor. We therefore reverse and remand for further proceedings.
Colonial Penn issued an automobile liability policy in Pennsylvania to its insured, June M. Cullen, which included UIM coverage. Cullen was involved in an accident in Morrisville, Pennsylvania, with defendant Richard L. Gibson. Both Cullen and Gibson were Pennsylvania residents, and both vehicles involved in the accident were registered in Pennsylvania. At the time of the accident, Gibson was insured by the Travelers Indemnity Company, having maximum liability coverage in the amount of $15,000. Under the terms of its UIM coverage, Colonial Penn paid to Cullen the sum of $32,500 for the injuries she sustained in the accident. In turn, Cullen subrogated her claim against Gibson under the terms of the subrogation clause of Colonial Penn's policy. Subsequently, Travelers tendered to Colonial Penn the amount of $15,000, representing the policy limits under its policy issued to Gibson. Colonial Penn then instituted the present action as Cullen's subrogee against Gibson to recover $17,500, representing the difference between the sum Colonial Penn paid to Cullen and the amount it received from Travelers.
In granting Gibson's motion for summary judgment, the motion judge concluded that New Jersey law applied because of our State's overriding interest in enforcing our no-fault laws. *58 Citing the Law Division decision in Longworth v. Ohio Casualty Gp. of Ins. Co., 213 N.J. Super. 70 (Law Div. 1986), aff'd sub nom. Longworth v. Van Houten, 223 N.J. Super. 174 (App.Div. 1988), he also concluded that there was no right of subrogation in New Jersey to recover UIM payments.
This case involves the subrogation rights of an insurer under the terms of an insurance contract issued in Pennsylvania in accordance with that State's underinsured statute. See 75 Pa. C.S.A. § 1731-1736. Our Supreme Court has adopted the rule, in resolving conflict of law issues involving liability insurance contract controversies, that:
... the law of the place of the contract will govern the determination of the rights and liabilities of the parties under the insurance policy. This rule is to be applied unless the dominant and significant relationship of another state to the parties and the underlying issue dictates that this basic rule should yield. [State Farm, etc., Ins. Co. v. Simmons' Estate, 84 N.J. 28, 37 (1980)].
State Farm, supra, recognized that such a rule will:
... generally comport with the reasonable expectations of the parties concerning the principal situs of the insured risk during the term of the policy and will furnish needed certainty and consistency in the selection of the applicable law. [84 N.J. at 37].
See also Buzzone v. Hartford Accident and Indemnity Co., 23 N.J. 447, 458 (1957).
In adopting the rule, State Farm incorporated the "most significant relationship" standard of the Restatement, Conflict of Laws 2d, § 188 at 575 (1971), which identifies the seven considerations pertinent to a conflict-of-law analysis: (1) the needs of the interstate and international systems; (2) the relevant policies of the forum; (3) the relevant policies of other affected states and the relevant interests of those states in the determination of the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability, and uniformity of result, and (7) ease in the determination and application of the law to be applied. See Restatement, supra, § 6 at 10; State Farm, supra, 84 N.J. at 34.
*59 The Restatement also advances the following specific principle applicable to casualty insurance policies:
The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and parties, in which event the local law of the other state will be applied. [Restatement, supra, § 193 at 610; emphasis added].
Thus, New Jersey would control where the bulk of activities covered by a liability policy took place in New Jersey and the majority of claims against the insured were filed in New Jersey courts. See Lac D'Amiante Du Quebec v. Am. Home Assur., 613 F. Supp. 1549, 1554 (D.C.N.J. 1985).
The foregoing choice-of-law principles dictate that since Colonial Penn's policy was issued in Pennsylvania, that state's law must govern in fixing the rights and liabilities of the parties unless other pertinent factors identified in State Farm and the Restatement compel a contrary result. See Melick v. Stanley, 174 N.J. Super. 271, 277 (Law Div. 1980), aff'd. o.b. 181 N.J. Super. 128 (App.Div. 1981). Applying these factors, we are satisfied that Pennsylvania law should apply in determining whether Colonial Penn has UIM subrogation rights against the tortfeasor.
Firstly, the accident occurred in Pennsylvania. Both drivers were Pennsylvania residents operating vehicles registered in that state. No significant relationship with New Jersey exists other than the fact that the tortfeasor moved to New Jersey after the accident occurred. Clearly, Pennsylvania had, at the time of the accident, the most significant relationship to the parties, the insurance contract transaction and the accident which is the subject matter of this litigation. See State Farm, supra, 84 N.J. at 39.
Secondly, Colonial Penn was required by Pennsylvania law to provide UIM coverage to Cullen. See 75 Pa. C.S.A. § 1731(a). Since Colonial Penn paid the UIM benefits in accordance with the Pennslyvania contract, Colonial Penn had "justified expectations" *60 that the corollary right of UIM subrogation under the policy would exist unless Pennsylvania expressly precluded such right. See Restatement, supra, § 6 at 10. Further, to apply New Jersey subrogation law simply because Gibson moved to New Jersey after the accident would frustrate the certainty, predictability and uniformity of result reasonably expected by Colonial Penn when it issued a Pennsylvania policy. Ibid.
The question then becomes whether New Jersey has a "dominant and significant" public policy sufficient to override the usual choice-of-law rule and dictate that New Jersey subrogation law should apply. State Farm, supra, 84 N.J. at 37. Sources of public policy include state legislation and state judicial decisions. Id. at 39-40; Vasquez v. Glassboro Service Ass'n, Inc., 83 N.J. 86, 98 (1980). Unless the differences between the state and foreign laws are fundamental, "... foreign law need not be considered offensive or repugnant to local public policy." State Farm, supra, 84 N.J. at 41; Caribe Hilton Hotel v. Toland, 63 N.J. 301, 308 (1973).
Both Pennsylvania and New Jersey provide for UIM coverage in automobile liability policies. Pennsylvania makes UIM coverage mandatory, whereas in New Jersey, UIM coverage is optional but an insurer must offer the coverage. Compare 75 Pa. C.S.A. § 1731(a) and N.J.S.A. 17:28-1.1b. Pennsylvania's UIM statute does not, either expressly or by implication, preclude an insurer from seeking recovery from the tortfeasor. The Pennsylvania courts have held that insurers, under the states's Uninsured Motorist Coverage Act, have a right of subrogation against the tortfeasor. See 40 P.S. § 2000(d); Walls v. City of Pittsburgh, 292 Pa.Super. 18, 22-23, 436 A.2d 698, 701 (1981); General Acc. Ins. v. City of Phila., 114 Pa.Commw. 528, 531, 539 A.2d 59, 61 n. 4 (1988). These decisions allowing subrogation appear consistent with Pennsylvania's well-established policy favoring subrogation generally "to compel the ultimate discharge of an obligation by him who in good conscience ought to pay it." Associated Hosp. Serv. of *61 Phil. v. Pustilnik, 262 Pa.Super. 600, 608, 396 A.2d 1332, 1336 (1979), quoting Potoczny v. Vallejo, 170 Pa.Super. 377, 380-381, 85 A.2d 675, 677 (1952). We have found no Pennsylvania case precluding subrogation to recover UIM payments.
Our UIM statute is also silent respecting whether subrogation is afforded an insurer to recover UIM payments. See N.J.S.A. 17:28-1.1. The statute does provide that policy provisions allowing subrogation for uninsured (UM) coverage must be approved by the Commissioner, thus suggesting that subrogation to recover UM payments may be allowed. See N.J.S.A. 17:28-1.1d.
Our present personal injury protection (PIP) statute, N.J.S.A. 39:6A-9.1, permits an insurer to recover payments made to its insured from the tortfeasor who does not carry PIP coverage. The Law Division in Longworth v. Ohio Casualty Gp. of Ins. Co., supra, 213 N.J. Super. at 85-86, held that the Legislature's express inclusion of subrogation rights in the PIP statute implied an intent to prohibit subrogation for UIM payments. Applying the expressio unius maxim, the court held:
This court is satisfied that the history of the automobile reparation statutes indicates that where the Legislature intends that a right of subrogation should exist, it expressly and affirmatively extends the right to subrogation. [Id. at 87].
The central issue in Longworth was whether a "no-consent to settle" exclusion in the UIM subrogation provision was valid, where such provision implied that if an insured settled his underlying claim against the tortfeasor the insured's entitlement to UIM benefits was forfeited. Id. at 75. In our affirmance of the Law Division, we focused on the "no-consent to settle" clause and agreed with the Law Division that the clause contravened New Jersey's public policy of assuring prompt payments to insureds. Longworth v. Van Houten, supra, 223 N.J. Super. at 185. We did not expressly address the Law Division's observation that UIM subrogation was per se prohibitive. However, in dicta, we suggested that the right of UIM subrogation against the tortfeasor, as an "abstract matter," *62 may be permitted, id. at 183. We also directed that "as a matter of future conduct" the carrier may promptly offer its insured "an acceptable settlement offer" received by the insured from the tortfeasor "... in exchange for assignment to it by the insured of the claim against the tortfeasor." Id. at 194. There is therefore at least the suggestion in our opinion that we may not agree with the Law Division's broad rejection of UIM subrogation.
In any event, we need not here express our agreement or disagreement with the holding by the Law Division in Longworth. Suffice it to say that even if the holding is correct, for purposes of choice-of-law, we cannot conclude that Pennsylvania's apparent policy permitting UIM subrogation is "offensive or repugnant" to New Jersey's public policy. State Farm, supra, 84 N.J. at 41. In adopting UM and UIM statutes, both states have focused on the need to protect innocent automobile victims from financially irresponsible motorists. See Fernandez v. Selected Risks Insurance Company, 82 N.J. 236, 240 (1980); Harleysville Mutual Casualty Co. v. Blumling, 429 Pa. 389, 395-396, 241 A.2d 112, 115 (1968); Tallman v. Aetna Cas. and Sur. Co., 372 Pa.Super. 593, 602, 539 A.2d 1354, 1359 (1988). Pennsylvania's general policy of compelling the ultimate discharge of an obligation by the one "who in good conscience ought to pay it," Associated Hosp. Serv. of Phil. v. Pustilnik, supra, 262 Pa.Super. at 608, 396 A.2d at 1336, is no different than our own. Aetna Ins. Co. v. Gilchrist Brothers, Inc., 85 N.J. 550, 560 (1981); Standard Accident Ins. Co. v. Pellecchia, 15 N.J. 162, 171 (1954).
Further, to the extent that New Jersey's approach, at least as pronounced by the Law Division in Longworth, may conflict with Pennsylvania's approach, we note that both the New Jersey UIM and PIP statutes regulate only New Jersey policies issued to cover motor vehicles registered or principally garaged in New Jersey. See N.J.S.A. 17:28-1.1a; N.J.S.A. 39:6A-3. Where the accident occurs in Pennsylvania and involves Pennsylvania registered vehicles, the predicate for any New Jersey *63 statutory or decisional law preclusion of subrogation rights simply does not exist. See Cirelli v. The Ohio Casaulty Insurance Co., 72 N.J. 380, 387 (1977). Thus, the fact that Pennsylvania may allow subrogation where the accident occurs in that state and involves Pennsylvania vehicles, does no violence to New Jersey's statutory scheme.
For the foregoing reasons, we are satisfied that Pennslyvania law must apply in determining whether Colonial Penn has UIM subrogation rights. Since we find no Pennsylvania statutory or decisional law precluding Colonial Penn's contractual and common-law right of subrogation, we conclude that it was error to dismiss its subrogation claim against the tortfeasor.
Reversed and remanded for further proceedings consistent with this opinion.