551 A.2d 1124

Henry Simmons, Executor of the Estate of Ethel H. Holloway Simmons, Petitioner *v.* Walter Cohen et al., Respondents.

Argued September 12, 1988, before Judges CRAIG and PALLADINO, and Senior Judge NARICK, sitting as a panel of three.

*Robert J. Mulligan,* for petitioner.

*Kate L. Mershimer,* Deputy Attorney General, with her, *John G. Knorr, III,* Chief Deputy Attorney General, Chief, Litigation Section, and *LeRoy S. Zimmerman,* Attorney General, for respondents.

OPINION BY JUDGE CRAIG, December 13, 1988:

*Simmons v. Cohen,* 111 Pa. Commonwealth Ct. 267, 534 A.2d 140 (1987), recites much of the history of this case, which is a class action brought against the Pennsylvania Department of Public Welfare (DPW) to require DPW to reimburse welfare recipients for legal expenses incurred by them in recovering Supplemental Security Income (SSI) awards from the federal government, awards from which DPW has recovered payment of the subrogation liens accruing to it by virtue of DPW's previous payment of interim benefits to the welfare recipients pending resolution of their federal claims.

The question now presented is as follows:

Where DPW has a common law obligation to bear its proportionate share of the legal costs incurred by welfare recipients in recovering federal SSI awards, as to which DPW has subrogation liens for providing interim assistance, may DPW elect to limit its common law obligation only to those recipients who received their federal awards after a specific date selected by DPW for administrative or 'policy' reasons?

*History of the Case*

In this case, certified as a class action by order of this court dated May 19, 1987, the initiating petitioner was Ethel H. Holloway, now deceased and represented by her personal representative, Henry Simmons. After the federal Social Security Administration denied SSI benefits for her in 1981, the decedent appealed that denial through the federal administrative process, receiving interim general assistance from DPW pending resolution of the federal case. As of March 1, 1983, the federal Social Security Administration awarded the decedent a lump sum for back SSI benefits in the amount of $4,892.40. The federal government sent a check for that amount directly to DPW, which retained $2,854.40, the *total* amount of interim assistance that DPW had paid, and relayed the rest to the decedent. By letter of June 20, 1983, the decedent, through counsel, asked DPW to reimburse her for DPW's proportionate share of the attorney's fees incurred in obtaining the federal award, which the decedent had paid after the Social Security had approved them as to amount.

Just one week thereafter, on June 28, 1983, DPW adopted its "SSI Attorney's Fee Reimbursement Policy" (DPW Fee Reimbursement Policy) acknowledging that DPW would reimburse attorney's fees to successful welfare recipients in SSI proceedings, but limiting reimbursement to those cases where "[t]he SSI award of record date is on or after April 1, 1983."

Although DPW's reimbursement policy, which excluded petitioner's claim by setting a cutoff date just one month later than the date of her award, thus came into being a few days after her request in June of 1983, DPW displayed an unusual degree of bureaucratic indifference by not reaching a definitive denial decision on her request until more than a year later, on July 2,

1984. DPW rested its denial solely on the fact that the record date of the petitioner's award antedated the cut-off date by one month.

Shortly after the denial letter, petitioner's counsel, on September 7, 1984, requested a hearing from DPW on the matter. To that request, DPW did not bother to respond.

Finally, when DPW's continuing silence for nearly a year indicated that no hearing would be forthcoming, the petitioner filed this action on August 14, 1985. In *Simmons*, this court denied DPW's motion for summary judgment, holding that this court had jurisdiction over the action as an original jurisdiction proceeding and declining to dismiss the action upon the ground of the statute of limitations. In *Simmons*, we also held that 42 Pa. C. S. §5524(6) sets a two-year period of limitation for actions against government units for the nonpayment of money or the nondelivery of property in a government officer's possession. The court further held that the statute, by the commencement of this action, was tolled as to other members of the class, and that the two-year period of limitations would bar only those class members, if any, whom DPW informed, before August 14, 1983, that their attorney's fee reimbursement requests were denied on the basis of the DPW Fee Reimbursement Policy cutoff date.

After our *Simmons* decision, counsel sought to implement the class certification by serving on DPW interrogatories seeking a list of class members who had received their federal awards pursuant to appeal on or after January 1, 1974, the date of the federal-state compact on this subject. DPW elected to answer only in terms of recipients whose awards were dated earlier than the April 1, 1983 cutoff date and who had received DPW denials of attorney fee reimbursement between the June 28, 1983 date of the DPW Fee Reimburse-

ment Policy and August 14, 1983, the date two years before the running of the statute of limitations was tolled by the commencement of this action. On the basis of that interpretation, DPW claimed that the only class member was Ethel H. Holloway, the deceased initiating petitioner in this case. Accordingly, DPW moved for decertification of the class on the ground that it only had one member.

DPW's interpretation was both factually and legally erroneous. As a matter of fact, as established by the Joint Stipulation, DPW had not expressly denied reimbursement to Ethel Holloway until long after August 14, 1983. As a matter of law, DPW was attempting to limit its response to the interrogatories only to those recipients which, according to DPW's own view of *Simmons*, would be excluded by virtue of the statute of limitations.

Moreover, despite DPW's theory that all potential parties earlier than Holloway need not be included in answering interrogatories because they would be barred by the statute of limitations, this court pointed out that it cannot delegate to DPW the function of determining, before trial, which persons are to be excluded from the class by reason of the statute of limitations. Because the purpose of discovery is to obtain information necessary to identify persons within the class and outside of it, proper response to discovery is required, particularly because that response would not constitute any admission with respect to the ultimate rights of the persons identified.

Petitioner's present motion for summary judgment must be characterized more properly as a motion for partial summary judgment because, if the substantive right is established, there would still remain in this action a need to proceed with the identification and possible classification of all class members.

*Subrogee's Obligation To Contribute to the Expenses of Litigation Producing the Fund Subject to the Subrogation Lien*

*Furia v. Philadelphia,* 180 Pa. Superior Ct. 50, 118 A.2d 236 (1955), established the common law duty of a governmental agency subrogee to contribute proportionately to the legal expense of recovering funds subject to subrogation rights. In *Associated Hospital Service of Philadelphia v. Pustilnik,* 262 Pa. Superior Ct. 600, 396 A.2d 1332 (1979), *vacated and remanded on other grounds,* 497 Pa. 221, 439 A.2d 1149 (1981), the Superior Court summarized *Furia* by stating:

> In Furia v. Philadelphia, 180 Pa. Super. 50, 118 A.2d 236 (1955), we held that when a subrogor's attorney creates a common fund for the benefit of the subrogor and subrogee, the attorney is entitled to reimbursement from the subrogee for its proportionate share of reasonable attorney's fees and litigation expenses.

262 Pa. Superior Ct. at 612, 396 A.2d at 1338.

The Commonwealth Court applied the same principle to DPW itself, in *Wilson v. Bensalem Township School District,* 27 Pa. Commonwealth Ct. 609, 367 A.2d 397 (1976). This court approved the distribution of a tort claim settlement obtained on behalf of a public assistance recipient, charging DPW's share of the recovery with legal fees attributable to that share.

In *Pennsylvania Department of Public Welfare v. Moran,* 84 Pa. Commonwealth Ct. 554, 480 A.2d 356 (1984), this court more recently affirmed the principle of DPW's responsibility as subrogee for a proportionate share of counsel fees; we did so specifically in relation to a welfare recipient's recovery of an award from the federal Social Security Administration sent to DPW to offset its earlier advance to the recipient. In that case, *in*

*1981,* DPW's legal counsel had agreed that the recipient was entitled to have DPW contribute to the attorney's fees. When DPW reneged on its legal counsel's agreement and attempted to contest the reimbursement obligation, this court confirmed the substantive principle, DPW's obligation to reimburse for attorney's fees.[1]

Finally, DPW itself, in the DPW Fee Reimbursement Policy involved here, has expressly recognized its obligation as a subrogee by declaring that its policy is consistent with "the equitable doctrine in Shearer v. Moore, 277 Pa. Superior Ct. 70, 419 A.2d 665 (1980)," where the Superior Court, in an opinion by Judge WIEAND, had affirmed DPW's obligation by stating that, where "the attorney for the welfare recipient . . . creates the fund from which the Commonwealth will benefit as subrogee, equity requires that the Commonwealth share in the cost of creating the fund." The Superior Court there also added:

> It would be manifestly unjust to permit the Commonwealth to recover its entire claim and permit it to avoid any part of the cost of creating the fund while requiring the welfare recipient to pay a disproportionately large share.

277 Pa. Superior Ct. at 76, 419 A.2d at 668.

Thus, our cases establish the obligation of DPW as subrogee, and DPW itself has expressly confirmed its

---

[1] In *Moran,* this court affirmed a decision in the recipient's favor by the Board of Claims where DPW had insisted that the claim be taken. Board jurisdiction was proper there because, unlike this case, DPW in that case had issued an appealable denial decision on the ground of its alleged inability to pay such claims directly. *Cf. Simmons,* 111 Pa. Commonwealth Ct. 272-78, 534 A.2d at 143-45, recognizing the necessity of the original jurisdiction action in this case because of DPW's refusal to make any definitive appealable decision.

acknowledgment of that "equitable doctrine," as derived from our court decisions.

*Legal Authority of DPW To Subject Its Reimbursement Obligation to a Time Limitation by Way of the Cut-off Date in Its Memorandum*

In view of the legally established obligation of DPW to contribute to the legal expense of recovering its share of the federal award—an obligation mutually acknowledged by both sides here—this case turns finally on deciding whether DPW has any legal authority to impose a time limitation on that obligation by its memorandum declaring that it would not make its contribution to attorney's fees out of any award shared by it where the date of the federal. award came before April 1, 1983.

DPW's policy, contained in a mere memorandum rather than in any duly promulgated regulation, reads as follows, in pertinent part:

## SSI ATTORNEY'S FEE REIMBURSEMENT POLICY

Consistent with the equitable doctrine in Shearer v. Moore, 277 Pa. Super. 70, 419 A.2d 665 (1980), the Department of Public Welfare (DPW), will, within the following conditions, reimburse an attorney's fee for the successful representation of a welfare recipient in a Supplemental Security Income (SSI) proceeding. The objectives of this policy are:

1. To increase the interest of welfare recipients to pursue federal funded benefits rather than state funded assistance benefits.

2. To promote and increase private attorney representation in welfare recipient SSI appeal cases.

3. To insure an equitable fee is generated for an attorney successfully representing a welfare recipient SSI applicant case.

The conditions of this policy are:

1. The SSI award of record date is on or after April 1, 1983.

2. The representation was not provided by a legal services attorney.

3. DPW received the recipient's SSI lump sum award (first benefit payment) as payment towards DPW's claim.

. . . .

To mark out the limits of the issue remaining, we note that the United States District Court, by its order of April 14, 1986, entered after transfer of this case to that court, remanded Counts IV and V of the Complaint to this court, while retaining federal jurisdiction over Counts I, II and III. The retained Counts, I, II and III, embraced issues of equal protection and due process under the United States Constitution, as well as issues under the federal Social Security Law. The remanded counts are grounded upon state statutes and case law and a claim for equitable relief with respect to the cutoff date.

DPW contends that, because legal claims concerning DPW's failure to grant hearings are federal claims retained within the exclusive jurisdiction of the U. S. District Court, this court should refrain from addressing those claims and should limit its consideration "to the only state claim before the court, i.e., the legality of the April 1, 1983 'starting date.' "

As a practical matter, the need for a DPW hearing, to compel DPW to render a decision on the Holloway claim, has been mooted by the commendable cooperation of counsel in entering into the Joint Stipulation. Therefore, there is no need to address the petitioner's

count relating to notice and hearing, whether or not barred by the assumption of federal jurisdiction.

What is left is the issue which DPW acknowledges to be within our ken. Given DPW's general obligation to contribute to attorney's fees as a benefited subrogee, as stated in the preceding portion of this opinion and accepted by the parties, the issue indeed is whether DPW had any legal authority to avoid that obligation with respect to those awards benefiting it which were dated earlier than April 1, 1983.

First, DPW contends that the contribution obligation, now acknowledged by it, did not exist before the 1984 date of this court's decision in the *Moran* case. Of course, that contention ignores not only the axiomatically retrospective effect of common law doctrines articulated by judicial decisions, but also overlooks DPW's own explicit admission in its 1983 memorandum, quoted above, that it has an obligation to contribute to attorney's fees "[c]onsistent with the equitable doctrine in Shearer v. Moore," a decision made in 1980. By thus justifying its disbursement of public money for reimbursement, in a memorandum dated during the year *before* our *Moran* decision, DPW affirmed that it is subject to an equitable doctrine judicially pronounced at least as early as 1980.

Moreover, because the 1980 *Shearer* decision was reiterating a common-law doctrine which *Furia* had applied to a governmental body as early as 1955, there is no doubt that DPW's obligation to reimburse attorney's fees has existed through the entire period since the compact date of March 1, 1975.

DPW attempts to defend the cutoff date by arguing that:

> Because any new policy must have a beginning, DPW conditioned eligibility under the Fee Policy to require that an applicant have an SSI

award date on or after April 1, 1983. DPW selected that date to cover SSI awards still being processed within DPW. Because pre-April 1, 1983 award cases would have been internally closed by DPW, it selected April 1, 1983 as the effective starting date for its Fee Policy.

DPW mistakenly treats this memorandum acknowledgment of its equitable obligation as if the typing of that memorandum constituted the enactment of a statute creating a governmental program or program policy. Although DPW's ultimate willingness in 1983 to fulfill its obligation as a subrogee by announcing and defining procedures for reimbursement applications is commendable, that administrative action did not in any way constitute the equivalent of the statutory enactment of a new governmental program or policy. Therefore, *Grime v. Pennsylvania Department of Public Instruction*, 324 Pa. 371, 188 A. 337 (1936), holding that "statutes and statutory changes" may carry a starting date without violating concepts of equal protection, is not applicable here because no statutory program is involved.

The pivotal question comes down to whether DPW, upon acknowledging its obligation to reimburse legal expense as a subrogee, could, by the fiat of its memorandum, declare its own statute of limitations with respect to that obligation, by simply announcing that awards then older than just three months could not qualify. The answer to that question must be negative.

DPW states that it "selected" the cut-off date simply because it considered pre-April 1, 1983 award cases to be "closed." If DPW, by that exclusion of pre-April award cases, is contending for some administrative justification of the shortened limitation period, such a factual basis is no more plausible than the legal one. DPW's claim that, as of the June 1983 date of its memorandum, all cases having an award date earlier than April 1, 1983

(more than just three months old) were "closed," is not credible, particularly in view of the fact that the Holloway award of March 1983 was still open and was kept open for a long time after that, by DPW's slowness to give any answer or decision on it.

Accordingly, this court perceives no legal authorization for DPW's attempted institution of the arbitrary cutoff date of April 1, 1983.

## Conclusion

The recipients entitled to reimbursement can only be determined after the discovery interrogatories are answered and the identification of class members during the whole period of the existence of the federal-state compact are known. The exclusion of any claimants by reason of time will therefore rest upon applying of the statute of limitations to the respective situations then factually disclosed upon the record.

Petitioner's motion will be granted to the extent of partial summary judgment, holding DPW liable for the reimbursement of attorney's fees with respect to all federal SSI awards shared by DPW, to the extent not barred by the statute of limitations, without reference to whether or not such awards pre-dated April 1, 1983. Consequently, DPW shall answer the pending interrogatories in accordance with previous actions of this court within sixty days after the order in this case becomes final.

## ORDER

NOW, December 13, 1988, petitioner's motion for summary judgment is granted in part, holding that respondent Department of Public Welfare (DPW) is liable for the reimbursement of reasonable and proper attorney's fees with respect to Supplemental Security Income awards from which DPW has received payment of

its subrogation liens for interim assistance, to the extent that such liability is not barred by the statute of limitations, without reference to whether or not the date of the awards was before or after April 1, 1983. Respondent DPW shall answer the pending interrogatories in accordance with previous actions of this court within sixty (60) days after this order becomes final.

Judge MACPHAIL did not participate in the decision in this case.

### AMENDED ORDER

AND NOW, this 26th day of January, 1989, upon consideration of Respondents' Application to Amend Prior Orders to Permit Interlocutory Appeal and of Petitioner's response thereto, IT IS HEREBY ORDERED that said application is granted. This court's orders of December 13, 1988; May 2, 1988; and November 24, 1987 are hereby amended to add, at the end of each order, the following sentence: "It is the opinion of this Court that this order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter."