645 A.2d 400

**Henry SIMMONS, Executor of the Estate of
Ethel H. Holloway Simmons, Petitioner,**

v.

**Karen SNIDER, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 17, 1993.

Decided June 28, 1994.

418

Robert J. Mulligan, for petitioner.

Susan J. Forney, for respondent.

Before CRAIG, President Judge, SMITH, J., and KELTON, Senior Judge.

CRAIG, President Judge.

We have before us a class action brought by Henry Simmons for the estate of Ethel Holloway and similarly situated claimants against the Department of Public Welfare (DPW) for reimbursement of attorneys' fees incurred on DPW's behalf by members of the class in the process of obtaining Supplemental Security Income (SSI) benefits under the Social Security Law, 42 U.S.C.A. 401 et seq. This is the third time that this court has ruled on a portion of this complex action. *See Simmons v. Cohen,* 111 Pa.Commonwealth Ct. 267, 534 A.2d 140 (1987), *aff'd per curiam,* 524 Pa. 583, 574 A.2d 600 (1987) (hereinafter *Simmons I* ), and *Simmons v. Cohen,* 122 Pa.Commonwealth Ct. 70, 551 A.2d 1124 (1988) (hereinafter *Simmons II* ).

Specifically, we are now asked by Simmons to grant his motion for complete summary judgment on the issues of (1) tolling the statute of limitation, and (2) the calculation of DPW's liability based upon statistics and stipulations. Although we can grant summary judgment on the question of tolling the limitation period, we can grant only partial summary judgment on part of Simmons' liability calculations.

The root of this case is a compact signed in 1975 and effective March 1, 1975, between the federal Secretary of Health, Education and Welfare and the State of Pennsylvania, titled "Supplemental Security Income for the Aged, Blind, and Disabled" (the compact). Under this compact, the Secretary

of Health, Education and Welfare, through the Social Security Administration (SSA), and DPW agreed to a system of reimbursements under which DPW makes interim assistance payments to Pennsylvania residents who have filed an appeal from a federal denial of SSI.

In the event that the resident succeeds on appeal, SSA will pay that recipient, in the form of a lump sum check, for every previous week that the recipient was eligible for SSI. However, SSA first sends that check to DPW, which reimburses itself out of the recipient's SSI award for the amount of interim assistance DPW has provided. DPW then forwards the remainder of the SSI award to the recipient. SSA then sends periodic federal SSI payments to the recipient thereafter.

The dispute in this case stems from the compact's silence on the question of whether DPW should reimburse to recipients that portion of their expenses in retaining legal counsel, for the SSI appeals process, which benefitted DPW by achieving the above-described reimbursement to DPW of the interim assistance paid by it.

The facts of this case, as set forth in *Simmons II*, are as follows:

In this case, certified as a class action by order of this court dated May 19, 1987 [1], the initiating petitioner was Ethel H. Holloway, now deceased and represented by her personal representative, Henry Simmons. After the federal [SSA] denied SSI benefits for her in 1981, the decedent appealed that denial through the federal administrative process, receiving interim general assistance from DPW pending resolution of the federal case. As of March 1, 1983, the federal [SSA] awarded the decedent a lump sum for

1. This court certified this class action on behalf of all persons who (1) were initially denied by the SSA benefits under Title XVI and regulations thereunder 20 C.F.R. 416 et seq.; and (2) who appealed and successfully overturned such denial before April 1, 1983 and were awarded benefits by the SSA; and (3) who had money deducted from such benefits and paid to DPW; and (4) who were not reimbursed or given credit by DPW for a pro-rata share of legal fees and costs of the social security proceeding.

back SSI benefits in the amount of $4,892.40. The federal government sent a check for that amount directly to DPW, which retained $2,854.40, the *total* amount of interim assistance that DPW had paid, and relayed the rest to the decedent. By letter of June 20, 1983, the decedent, through counsel, asked DPW to reimburse her for DPW's proportionate share of the attorney's fees incurred in obtaining the federal award, which the decedent had paid after the Social Security had approved them as to amount.

Just one week thereafter, on June 28, 1983, DPW adopted its 'SSI Attorney's Fee Reimbursement Policy' [SSI Fee Policy] acknowledging that DPW would reimburse attorney's fees to successful welfare recipients in SSI proceedings, but limiting reimbursement to those cases where '[t]he SSI award of record date is on or after April 1, 1983.'

Although DPW's reimbursement policy, which excluded petitioner's claim by setting a cutoff date just one month later than the date of her award, thus came into being a few days after her request in June of 1983, DPW displayed an unusual degree of bureaucratic indifference by not reaching a definitive denial decision on her request until more than a year later, on July 2, 1984. DPW rested its denial solely on the fact that the record date of the petitioner's award antedated the cutoff date by one month.

Shortly after the denial letter, petitioner's counsel, on September 7, 1984, requested a hearing from DPW on the matter. To that request, DPW did not bother to respond.

Finally, when DPW's continuing silence for nearly a year indicated that no hearing would be forthcoming, the petitioner filed this action on August 14, 1985.

*Id.,* 122 Pa.Cmwlth. at 72–73, 551 A.2d at 1125–26 (emphasis in original).

When this case came before us on DPW's motion for summary judgment in *Simmons I,* we denied the motion. We held that: (1) this claim falls within this court's original jurisdiction; (2) the Board of Claims does not have jurisdiction in this case because the dispute concerns statutory, not contractual, entitlements; (3) the proper statute of limitations in

this action is the two-year period provided in § 5524(6) of the Judicial Code, 42 Pa.C.S. § 5524(6), which could not begin to run until Holloway was informed by DPW that her request for fees was denied because of the SSI Fee Policy; and (4) that if this court later determined that the SSI Fee Policy and non-reimbursement practice are illegal and constitute a failure by DPW to perform legally mandated, non-discretionary duties, then mandamus will lie to compel the performance of those duties and DPW will not be shielded by official immunity.

Then, in *Simmons II,* this court held that DPW, as a subrogee, has a common law obligation to reimburse the class members a proportionate share of the legal costs of appealing and winning a claim for SSI. This court went on to decide the following particular question:

> Where DPW has a common law obligation to bear its proportionate share of the legal costs incurred by welfare recipients in recovering federal SSI awards, as to which DPW has subrogation liens for providing interim assistance, may DPW elect to limit its common law obligation only to those recipients who received their federal awards after a specific date selected by DPW for administrative or "policy" reasons?

*Simmons II,* at 71, 551 A.2d at 1125. The court held that "DPW, upon acknowledging its obligation to reimburse legal expense as a subrogee, [cannot], by the fiat of its memorandum [the SSI Fee Policy], declare its own statute of limitations with respect to. that obligation, by simply announcing that awards then older than just three months could not qualify." *Id.* at 80, 551 A.2d at 1129.

The parties have since attempted, unsuccessfully, to come to an agreement concerning the determination of the size of the class and the calculation of the amount owed by DPW. DPW contends that the two-year statute of limitation on this action confines class membership to members whose cause of action accrued within the two-year period preceding August 14, 1985, the date this case was filed. DPW thus notes that there is only one class member who falls within that time period:

Ethel Holloway. Therefore, DPW wants the class to be decertified.

Simmons, on the other hand, argues that we also must toll (suspend) the running of the statute between the March 1, 1975, effective date of the federal compact, and August of 1983 for equitable reasons. In addition, the records kept by DPW and SSA contain incomplete information identifying the class members who retained attorneys as representatives and the amounts of the awards the class members won. Therefore, Simmons argues that we should approve his plan for calculating DPW's liability based upon averages from the available records.[2]

### 1. Statute of Limitations

Initially, we note that DPW contends that we are limited to applying the statute of limitations for two years backwards from the filing date of this action. As we understand DPW's argument, the whole cause of action embraces only DPW's specific act of designating a cutoff date for reimbursements in 1983. The wrongs sought to be addressed in this case, according to DPW, are ultimately only those that resulted from the imposition of that SSI Fee Policy. Thus, all class members denied reimbursement before imposition of the policy could not have been denied reimbursement because of the policy as it did not yet exist. DPW contends that pre-policy applicants, if they have a legal claim at all, have one that is different than Holloway's, and the 1975–1983 tolling issue is therefore not involved in this case.

However, DPW's suggested scope for this case is too narrow. In *Simmons II*, this court held that DPW cannot arbitrarily set a date after which it will begin to act in

---

**2.** A motion for summary judgment is proper only where there is no factual dispute and the pleadings, depositions, answers to interrogatories and admissions together with affidavits demonstrate that the moving party is entitled to judgment as a matter of law. Furthermore, we must examine the record in the light most favorable to the non-moving party, here DPW. *Keenheel v. Commonwealth of Pennsylvania, Pennsylvania Securities Commission,* 134 Pa.Commonwealth Ct. 494, 579 A.2d 1358 (1990).

accordance with its preexisting common law obligation. In holding that DPW did not have the authority to declare its own statute of limitations, this court condemned both the cutoff date and the previously *unwritten* policy of not reimbursing class members. Therefore, for clarity we hold here that DPW cannot shield itself from lawsuits stemming from its earlier default as to its non-discretionary common law duty simply by recognizing that duty as of a later date.

■ Accordingly, every failure of reimbursement from 1975 to 1983, as well as thereafter, violated DPW's non-discretionary subrogee's duty and falls within the scope of this action. However, whether we may include applicants in this class who were denied reimbursement before the normal running of the two-year limitation (that is, a simple two-year period without any tolling) may only be answered by examining the law of statutes of limitation. Therefore, we disagree with DPW's interpretation of the scope of this case. The facts and the rules governing tolling statutes of limitation play a significant role in determining the size of the class here.

■ Turning then to the merits of that issue, we note that generally a statute of limitation begins to run from the time a party knows, or should know through the exercise of ordinary diligence, that a cause of action has accrued. *Pocono International Raceway v. Pocono Produce*, 503 Pa. 80, 468 A.2d 468 (1983). DPW argues that the class members who failed to file a claim before August 14, 1983 must be time-barred from joining this action because, according to DPW, each class member's cause of action accrued when the class member received the first lump sum SSI check showing DPW's interim assistance deduction.

DPW believes that simple arithmetic necessarily indicated that the checks did not include any reimbursement for DPW's share of legal fees by way of a credit in the recipient's favor. In addition, each check transmittal instructed the class member how to appeal discrepancies "for any reason". DPW thus suggests that the class members could have discovered before 1983 that DPW was not providing reimbursement for legal

fees. Thus, DPW believes the class members have no justifiable reason for failing to discover this type of cause of action within two years of receiving the lump sum award.

To restate DPW's argument, this claim could have been brought to court years before 1985 by other class members. At some point, class members other than Holloway corresponded informally with DPW seeking reimbursement. DPW was not silent for all of those inquiries. For example, the record indicates that, in one letter, a DPW agent refused reimbursement by noting that the subrogation agreement signed by the applicant before receiving interim assistance did not provide for reimbursement. So why, asks DPW, did that claimant and others, fail to do what Holloway finally did in 1985? Why did they not sue?

Simmons responds by arguing that the undisputed facts of this case indicate that DPW made the possibility of discovering the non-reimbursement policy and the process for appealing reimbursement decisions before implementation of the SSI Fee Policy difficult and expensive so that litigation became an unlikely course of action for these class members. Furthermore, Simmons contends, years after DPW, as noted above, informed some class members that they had no *contractual* right to reimbursement, DPW suddenly recognized its duty to reimburse, but attempted to perform it only prospectively.

Therefore, Simmons asserts that DPW created built-in obstacles for appeals and confined the class members to a belief that they had received all that was due them. Then, Simmons argues, DPW changed its policy and applied an artificial cutoff date to bar class members from suit because of the statute of limitation. Simmons contends that these facts justify the application of the principles of equitable estoppel based on fraud or concealment against DPW to prevent its defensive use of the statute of limitations to bar this class action.

We agree with Simmons. The Pennsylvania Supreme Court has long held that the doctrine of estoppel may be used to prevent the defensive use of a statute of limitations by the State if fraud or concealment is established by the facts.

*Department of Public Welfare v. UEC, Inc.,* 483 Pa. 503, 397 A.2d 779 (1979). The Supreme Court set forth the relevant principles of estoppel based on fraud or concealment as follows:

> Where, 'through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry,' the defendant is estopped from invoking the bar of the statute of limitations. *Moreover, defendant's conduct need not rise to fraud or concealment in the strictest sense, that is, with an intent to deceive; unintentional fraud or concealment is sufficient.* Mere mistake, misunderstanding or lack of knowledge is insufficient however, and the burden of proving such fraud or concealment, by evidence which is clear, precise and convincing, is upon the asserting party.

*Molineux v. Reed,* 516 Pa. 398, 402–403, 532 A.2d 792, 794 (1987) (emphasis added, citations omitted). Furthermore, whether the facts in a case give rise to an estoppel is a question of law answerable by this court. *Nesbitt v. Erie Coach Company,* 416 Pa. 89, 204 A.2d 473 (1964).

The facts here demand that we apply estoppel principles to toll operation of the statute to a time subsequent to the effective date of the compact, and beyond the dates of DPW's uninformative payments of the award balances. The facts of this case indicate that DPW's policies, or lack thereof, created a situation in which these particular class members were deprived of any incentive to sue for reimbursement of their legal expenses which benefitted DPW. DPW's actions can only be characterized as informed neglect of the duties that surrounded its nondiscretionary obligation to reimburse those amounts. DPW knew or should have known of its common law duty to reimburse, and it neglected to publish either a statement of policy (before 1983) to educate the public as to DPW's position on such reimbursement claims, or to promulgate regulations for an appeals process regarding legal fee reimbursement.

DPW's refund notices presented two unseen—but very real—barriers. First, even if we assume that the class member could mathematically determine whether she is receiving

reimbursement for legal fees as well as for back benefits,[3] the class member, who is by statutory definition either disabled and poor, or elderly and poor, is suddenly forced to choose between challenging the state in order to receive her common law entitlement, or avoid additional litigation expense by taking the reduced amount that DPW forwarded.

Inasmuch as DPW is statutorily charged with the job of helping these class members, they should not be placed in a position such as this by their benefactor. As this case itself illustrates, asking for reimbursement would be very complicated; the question here blurs the lines between contractual, statutory and common law entitlements.

The second barrier was inherent in the fact that DPW sent the check, refund notice and appeal instructions directly to the class member rather than to the attorney of record. Ordinarily, the attorney of record receives such materials on behalf of the client. In this way the attorney is best able to carry out the client's wishes and the attorney is kept abreast of all related case developments and the relevant legal implications.

DPW asserts that it did not have records as to which applicants retained legal counsel. Thus, DPW argues that it could not send the information to legal representatives. However, because DPW had an obligation beginning at the inception of the compact to reimburse applicants, *See Simmons II*, DPW should have implemented a system in 1975 for tracking the applicants who had retained counsel. DPW's lack of information is a result of its disregard of its common law duty to reimburse. Therefore, if there is any prejudicial effect arising from the class members receiving the refund notice and appeals instructions, it should not benefit DPW or harm the class members because DPW created its own difficulty.

Furthermore, in this case, DPW's appeals instructions were unhelpful. The refund notice sent to Holloway instructed her that she had only fifteen days to request an appeal hearing from her "County Assistance Office". Of course, this notifica-

---

3. Note that this is not an assumption that we are required to make under our standard of review on motions for summary judgment. We merely make this assumption for the sake of the argument.

tion imposed an unusually short time period for instituting proceedings and was inconsistent with DPW's later contention that reimbursement claims should be made to the Board of Claims. *See Simmons I.* In fact, DPW stipulates that "as a matter of general practice and policy during all times relevant [it] did not provide a hearing to review the amount DPW withholds from an SSI lump sum reimbursement when the issue is attorney fee reimbursement." [4]

Therefore, we note in summary the following administrative anomalies perpetuated by DPW in this case. (1) Without statutory authority, DPW practiced a policy of nonreimbursement of the legal fee portions benefitting DPW. (2) It never published any statement of this negative policy. (3) DPW stipulates that it did not grant hearings on reimbursement issues. (4) DPW's refund notice unnecessarily curtailed class members' filing time and directed class members to local DPW agencies which, in practice, asserted that reimbursement matters are not actually handled by local DPW agencies but by the Board of Claims. (5) DPW corresponded directly with class members regardless of whether the class member had an attorney of record.

We note too, that the amount in controversy averages less than $2000 per class member. Because DPW did not promulgate any procedures for recovering reimbursement, and its stipulated policy and practice was to deny hearings for this issue, there was no inexpensive administrative remedy available to the class members. The only options for the class members were to litigate in court or to take what they had in

4. DPW emphasizes at several points in its brief that the above stipulation must be qualified by the fact that in the time period that DPW wishes this court to consider as the proper period for this cause of action, i.e., August 1983 to August 1985, petitioner Holloway was the only applicant to seek administrative review on the question of reimbursement. Therefore, according to DPW, the stipulation actually only describes the specific case of Holloway, and should not be interpreted broadly as an agency policy.

    However, we must interpret the language to which the parties specifically agreed. The stipulation describes a general practice, not an isolated incident. DPW agreed to the language as it appears before us now. Therefore, we will not rewrite the language that the parties presumably selected with great care for purposes of litigation.

hand and suffer loss. Given the small amount in controversy on an individual basis and the financial straits of the class members, in addition to the bureaucratic indifference this court noted in *Simmons II,* litigation was not a real option for the class members.

We do not believe that these class members should suffer financially for the act of benefiting DPW because DPW is the party that created and continued the confusion that resulted in this case. DPW ignored its role as rule-maker and as interpreter of the compact when it did not take explicit actions to implement a policy to address reimbursements.

DPW should not benefit from its inaction by retaining money that rightfully belongs to the elderly and disabled poor. We believe that DPW will be unjustly enriched if the statute of limitations is applied so as to shield it as the party that knowingly neglected its role as rule-maker.

Accordingly, we grant Holloway's motion for summary judgment regarding the running of the statute of limitations. Because of the particular facts of this case and the obvious inequity of limiting the class members' remedy, we hold that the statute of limitations is tolled from March 1, 1975, the effective date of the compact, to August, 1983, two years before this suit.

### 2. Calculation of Liability from Incomplete Databases

However, we cannot grant complete summary judgment for Simmons. Although we can answer the legal question of whether the statute of limitations can be tolled, we cannot determine, as a matter of law, that Simmons' method of calculating liability amounts by averaging is sufficient. The department has raised a factual question on the issue of averaging that we cannot resolve in a motion for summary judgment.

The problem on this point is that there is no single source of data that includes who the class members are, who their attorney is, where both are located, how much the class member won from SSI and how much the attorney cost. Thus

Simmons has gathered data from several sources to generate a total dollar figure for DPW's liability. The data fall into seven categories[5] based upon the completeness of available data. For example, Group 1 is characterized as having "financial information and confirmation of professional representation ... Actual figures were used." Group 6, on the other hand, contains limited "original" data and considerable "calculated" data, that is, numbers created by averaging original data.

There is no dispute concerning the accuracy of the Group 1 figures. Therefore, we will grant partial summary judgment to Simmons for Group 1 in the amount of $471,711.71.

However, DPW challenges the accuracy of the numbers generated by Simmons through averaging. DPW states in its brief:

> By their own admission petitioners have now manipulated the data base to exclude federal awards which would give a true average and instead have selected only certain cases to factor into the 'average' with the intent to inflate the 'average'. Such manipulation not only fails to arrive at an 'average' but is a questionable maneuver that should not be permitted.

This is sufficient to raise a question of fact. Therefore, we cannot completely resolve this question upon this motion. The validity and method of determining liability by generating averages can be decided only after reviewing evidence.

Accordingly, we grant Simmons' motion for summary judgment on the question of tolling the statute of limitations, and partial summary judgment for DPW's liability for $471,711.71 to the class members in Group 1. However, we must deny the motion as to all groups other than Group 1, and give further consideration to the matter of calculating liability from the incomplete databases through averaging.

## ORDER

NOW, June 28, 1994, we grant petitioner Simmons' motion for summary judgment insofar as the statutory limitation

---

5. The seven categories are numbered 1, 1A, 2, 3, 4, 5 and 6.

period in the above captioned matter shall be deemed to be tolled between March 1, 1975 and August 14, 1983, and we grant petitioner Simmons partial summary judgment for DPW's liability for $471,711.71 to the class members in Group 1. We deny petitioner Simmons' motion for summary judgment on the question of the amount of liability as to the other groups in the record.