Jack T. HOWARD, Plaintiff

v.

Jake MENDEZ, et al., Defendants.

Civil Action No. 1:CV–02–2289.

United States District Court,
M.D. Pennsylvania.

Feb. 9, 2004.

Jack T. Howard, White Deer, PA, for the Plaintiff Pro Se.

Douglas S. Goldring, Assistant General Counsel Federal Prison Industries (UNICOR), Washington, DC, Stephen Cerutti, U.S. Attorney's Office, Harrisburg, PA, for the Defendants.

## MEMORANDUM

CALDWELL, District Judge.

I. *Introduction.*

The pro se plaintiff, Jack T. Howard, an inmate at the Allenwood Federal Correctional Institution, White Deer, Pennsylvania, filed this civil rights action, alleging that the defendants discriminated against him when they fired him from his prison job because of a hearing disability, that conditions on the job had worsened an already existing hearing problem, and that defendants retaliated against him when he complained about his firing.[1] He makes a claim under the Rehabilitation Act, 29 U.S.C. § 794, and *Bivens* claims for violations of the First and Eighth Amendments and the equal-protection component of the Fifth Amendment.[2]

The defendants have filed a motion, which we converted to one for summary judgment, arguing that Plaintiff's suit is barred by the statute of limitations. We will evaluate the motion under the well established standard. *See Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 246–47 (3d Cir.2002). In doing so, we will deny it because we conclude that equitable estoppel and statutory tolling combine to defeat the motion on the record before us.

II. *Background.*

The following is the background to the motion, as established by the summary-judgment record. On February 29, 2000, Howard was fired from his prison job. (Doc. 15, Am.Compl., p. 5). On March 9, 2001, he filed a civil rights action raising the same claims presented here. On April 9, 2001, we dismissed that case without prejudice because he had only partially completed the Bureau of Prisons' administrative-remedy process, thus failing to exhaust available administrative remedies as required by 42 U.S.C. § 1997e. *Howard v. Zenk*, No. 1:CV–01–0438 (M.D. Pa. April 9, 2001) (Caldwell, J.).[3]

---

1. The defendants are the following employees of the Bureau of Prisons: Jake Mendez, the former warden; Michael Zenk, warden; F.T. Mummaw; J.D. Dubaskas; Todd Craig; T. Szulanczyk; the Safety Department; Robert Manenkoff; Joe Brague; M. Gemberling; U. Vargas; Kathleen Wiegand; J. Hutton; J. Tritchler; V. Primiterio; J. Richmond; D. Schader; and J. Clark.

2. A *Bivens* claim is a constitutional tort claim named after the case in which the claim was first accepted, *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). It is the claim against federal officers that is the counterpart to a claim against state officers under 42 U.S.C. § 1983.

3. Section 1997e(a) requires exhaustion of administrative remedies before a prisoner can file suit under any federal law with respect to prison conditions. *See Booth v. Churner*, 532 U.S. 731, 739, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)(exhaustion under section 1997e(a)

The Bureau's Administrative Remedy Program, 28 C.F.R. §§ 542.10–542.15 (2003), has four steps. First, the inmate must attempt an informal resolution with prison staff under procedures established by the warden of each prison, *id.* at § 542.13(a), using a form commonly identified as a "BP–8." The Allenwood "Informal Resolution" form involved in Plaintiff's case contained the following language at the beginning:

> This form will serve as documentation by the respective staff member and his/her unit manager to indicate an informal attempt to resolve the complaint of the following inmate. Inmates are NOT to complete this form.

(Doc. 35, Ex. 1). Below that, there was a section for describing the "Nature of complaint" which was "to be completed by staff." *Id.* Below that was a signature line for the inmate prefaced by "I have read the complaint above as written by Unit Staff and agree it is accurate." *Id.*

Second, if the informal resolution is unsuccessful, an inmate must file a formal administrative-remedy request with the warden on a Form BP–9. 28 C.F.R. § 542.14(a). Third, he may file an appeal to the Regional Director on a Form BP–10. *Id.* at § 542.15. Fourth, the inmate may appeal to the Bureau's General Counsel on a Form BP–11. *Id.*

Plaintiff did eventually complete the administrative process. After dismissal of his first lawsuit, he began anew with a BP–8. However, the process was not promptly begun. On August 5, 2001, about four months after the dismissal of the previous case, Plaintiff submitted an "Inmate Request to Staff" complaining that his counselor, defendant Clark, was not assisting him in completing his BP–8. (Doc. 36, Ex. 2). On August 26, 2001, Plaintiff submitted another inmate-request form, this time to defendant Craig, stating that this would be the third time Plaintiff would be seeking his help to obtain Clark's assistance in filling out Plaintiff's administrative papers. (*Id.*, Ex. 3). During this time, Plaintiff also sought medical clearance in an attempt to be rehired to his prison job. Having received a response from the prison hospital, on November 7, 2001, Plaintiff sent an inmate-request form to Clark, stating that he was considering the response as a BP–8 and requesting a form BP–9. On November 8, 2001, Clark responded that the hospital's answer was not a BP–8 and that "we could do the 8" at the "open house." (*Id.*, Ex. 7). On November 13, 2001, Clark filled out the BP–8. (Doc. 35, Ex. 1). Plaintiff then filed his BP–9, BP–10 and BP–11, receiving a response from the General Counsel on June 11, 2002. (*Id.*, Ex. 2).

Plaintiff started this lawsuit on December 10, 2002.[4] Defendants then filed a motion to dismiss on limitations grounds which, as noted, we converted into a motion for summary judgment.

### III. *Relevant Limitations Law.*

■ There is no statute of limitations for a *Bivens* claim, *Napier v. Thirty or More Unidentified Federal Agents*, 855 F.2d 1080, 1087 n. 3 (3d Cir.1988), or for a Rehabilitation Act claim. *Swierkowski v.*

---

is mandatory). Section 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

4. The complaint was filed on December 16, 2002, but we have given Plaintiff the benefit of the mailbox rule, *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), in deciding that the lawsuit was initiated on December 10.

*Consolidated Rail Corp.,* 168 F.Supp.2d 389, 393 (E.D.Pa.2001); *Saylor v. Ridge,* 989 F.Supp. 680, 685 (E.D.Pa.1998). In these circumstances, courts borrow the most analogous state statute of limitations, *Napier,* 855 F.2d at 1087 n. 3; *Swierkowski, supra,* 168 F.Supp.2d at 393, the two-year statute of limitations in Pennsylvania for a personal-injury action in 42 Pa.C.S. § 5524(2), (7). *Egervary v. Young,* 159 F.Supp.2d 132, 155 (E.D.Pa.2001)(*Bivens* claim); *Swierkowski, supra,* 168 F.Supp.2d at 394 (Rehabilitation Act claim); *Saylor, supra,* 989 F.Supp. at 686 (same); *Estrada v. Trager,* 2002 WL 31053819, at *3 (E.D.Pa.)(same). *See also Lake v. Arnold,* 232 F.3d 360, 368 (3d Cir.2000)(borrowing the Pennsylvania two-year statute of limitations for an action under 42 U.S.C. § 1983).

■■■ The court must also apply any relevant state tolling principles, *id.* at 368, unless they conflict with federal law and policy. *Id.* at 369, 370. In Pennsylvania, the limitations period can be tolled by the discovery rule, a judicially created, equitable rule that tolls the period during the time that a plaintiff could not have known, in the exercise of reasonable diligence, about the existence of his injury. *See Dalrymple v. Brown,* 549 Pa. 217, 223, 701 A.2d 164, 167 (1997). A plaintiff "can [also] escape the rigors" of the limitations period by invoking equitable estoppel, *Lake, supra,* 232 F.3d at 367, if the defendant has committed fraud or concealment that "causes the plaintiff to relax his vigilance or deviate from his right of inquiry" so that the suit is not timely filed. *Molineux v. Reed,* 516 Pa. 398, 402, 532 A.2d 792, 794 (1987). However, the fraud or concealment need not be fraud or concealment "in the strictest sense, that is, with an intent to deceive; unintentional fraud

or concealment is sufficient." *Id.* at 403, 532 A.2d at 794. Additionally, certain statutory provisions address tolling of the limitations period under certain circumstances. *See* 42 Pa.C.S. §§ 5532–5535.

■■■ Although state tolling rules apply, federal law controls when the cause of action accrues. *Genty v. Resolution Trust Corp.,* 937 F.2d 899, 919 (3d Cir.1991); *Elliott Reihner Siedzikowski & Egan, P.C. v. Pennsylvania Employees Benefit Trust Fund,* 29 Fed. Appx. 838, 840 (3d Cir.2002) (nonprecedential). Under federal law, a civil rights cause of action accrues, and the statute begins to run, when the plaintiff "knew or should have known of the injury upon which [the] action is based." *Sameric Corp. of Delaware, Inc. v. City of Philadelphia,* 142 F.3d 582, 599 (3d Cir.1998)(section 1983 action)(brackets added).

## IV. *Discussion.*

Although Plaintiff's complaint seeks redress for some acts occurring before February 29, 2000, the defendants assume for the purpose of their motion that the limitations period for all claims accrued on that day, the date Plaintiff was terminated from his prison job. (Doc. 25, Defs.' Supporting Br., p. 7 n. 6.).

With this assumption, the defendants argue that the statute began running on February 29, 2000, and that the two-year limitations period expired on March 1, 2002.[5] Consequently, this case is time-barred because it was filed on December 10, 2002, about nine months too late. (*Id.,* p. 7).

The defendants further argue that Plaintiff cannot rely on any tolling rule, court-made or statutory, to extend the limita-

---

5.   As 2000 was a leap year, the court will use March 1, 2002, as the limitations deadline (the same date the defendants use), the date that gives Plaintiff a full two years from February 29, 2000.

tions period. As to the discovery rule, they point out that there was nothing hidden about the nature of Plaintiff's firing; he would have discovered that injury on the date it happened. (Doc. 35, Defs.' Supplemental Br., p. 6). As to equitable estoppel, they maintain that Plaintiff does not allege that any of the defendants "fraudulently misrepresented any operative facts." (*Id.*). They also argue, citing in part, *Robbins & Seventko Orthopedic Surgeons, Inc. v. Geisenberger*, 449 Pa.Super. 367, 674 A.2d 244 (1996), that Pennsylvania does not toll the limitations period while a plaintiff exhausts administrative remedies. Finally, they point out that Pennsylvania has provided statutorily that incarceration will not toll the statute. *See* 42 Pa.C.S. § 5533(a).

Alternatively, assuming for the sake of argument that administrative exhaustion is relevant, they assert Plaintiff would only be entitled at most to tolling from November 13, 2001, the date defendant Clark filled out the BP–8, through June 11, 2002, the date the administrative process was completed at the General Counsel's level, a period of only about seven months, not enough time to avoid the limitations bar since the complaint was filed some ten months (in their view) after the statute expired.

In part, Plaintiff counters that, in light of section 1997e(a), the limitations period must be tolled while he was attempting to exhaust administrative remedies; however, he would use a longer time frame than the defendants. He would toll the period from April 9, 2001, the date we dismissed his first lawsuit, until June 11, 2002. In his supplemental brief, Plaintiff represents he was actively pursuing his administrative remedies during this time. Plaintiff's time frame would toll the period for about thirteen months, thereby making the complaint timely since it was filed about nine months after the limitations deadline.

■ Contrary to the defendants' argument, the court believes that Pennsylvania's rule of equitable estoppel would apply here. That rule applies to fraud "in the strictest sense" but also extends to a defendant's conduct that is even unintentionally an act of fraud or concealment that leads the plaintiff not to file within the limitations period. We think that Plaintiff has provided sufficient evidence of defendant Clark's conduct to bring it within the scope of the latter application.

Specifically, Clark's delay from at least August 5, 2001, as evidenced by Plaintiff's inmate-request form of that date, until November 13, 2001, to fill out Plaintiff's BP–8 form is neglect that would come within this application even though Clark's conduct would not normally be seen as a form of concealment, let alone fraud. Clark's delay was not intentional, or intended to harm Plaintiff, but that issue is irrelevant because the Pennsylvania rule extends to so-called unintentional fraud or concealment. Critical here is that Clark did delay and this delay involved a part of the administrative process that prison rules prohibited Plaintiff from doing himself, filling out a BP–8 form. The defendants should therefore be estopped from invoking the limitations period for the time between August 5, 2001, and November 13, 2001.

Even though Pennsylvania courts have not faced this precise factual scenario, we find support for our ruling in *Simmons v. Snider*, 165 Pa.Cmwlth. 417, 645 A.2d 400 (1994). The facts of *Simmons* are dissimilar to those here, but the case is relevant because the Pennsylvania Commonwealth Court was willing to apply equitable estoppel in that case to the conduct of the respondent state agency, which was characterized in material part by a failure to act.

As *Simmons* relates, in 1975 the Pennsylvania Department of Public Welfare

(DPW) entered into a compact with the federal government whereby DPW would make interim assistance payments to Pennsylvania residents while these residents appealed the denial of supplemental security income through the Social Security Administration. If the resident succeeded on appeal, the federal government would make a lump-sum payment for past benefits to DPW, which in turn would deduct the amount of its assistance payments and pass the difference on to the resident.

*Simmons* was a class action in which the residents claimed, and the commonwealth court agreed, that DPW should pay them their legal expenses in establishing their right to federal payments, on the theory that the residents had benefitted DPW by obtaining reimbursement for the agency.

Under the applicable two-year statute of limitations, DPW argued in part that no resident could be included in the class who had not made a claim for legal expenses on or after August 14, 1983, two years before August 14, 1985, the filing date of the action. Discussing the discovery rule, DPW argued that residents must have known about their claims for legal expenses from the amount DPW forwarded to them after deducting the sum of the agency's interim payments, supposedly a matter of "simple arithmetic." *Id.* at 424, 645 A.2d at 404.

The commonwealth court rejected this argument, finding that equitable estoppel, in line with the fraud-or-concealment language from *Molineux, supra,* had tolled the statute of limitations from March 1, 1975, the date of the compact, until the date suit was filed. Among other things, it relied on the following findings:

(1) without statutory authority, DPW practiced a policy of nonreimbursement of the legal fee portions benefitting DPW. (2) It never published any statement of this negative policy. (3) DPW stipulates that it did not grant hearings on reimbursement issues. (4) DPW's refund notice unnecessarily curtailed class members' filing time and directed class members to local DPW agencies which, in practice, asserted that reimbursement matters are not actually handled by local DPW agencies but by the Board of Claims. (5) DPW corresponded directly with class members regardless of whether the class members had an attorney of record.

165 Pa. Commw. at 428, 645 A.2d at 406. The court also noted that "litigation was not a real option for the class members" given the small size of the DPW payments and the residents' financial conditions, *id.* at 429, 645 A.2d at 406, and should not have been imposed on the residents given DPW's statutory duty to assist the class members. *Id.* at 427, 645 A.2d at 405.

Of course, some facts are present in *Simmons* that are absent here: the refund notice only gave a short time for filing an appeal with the agency and incorrectly directed class members to local DPW agencies; DPW corresponded directly with class members and not with their attorneys, if they had one; and the financial condition of class members.

Nonetheless, we cannot ignore the significance the commonwealth court attached to DPW's failure to act, as established by the first three numbered findings in the portion of the opinion quoted above. Also, elsewhere in the opinion the court characterized DPW's conduct as "informed neglect," *id.* at 426, 645 A.2d at 405, or a failure to "take explicit actions to implement a policy to address reimbursements." *Id.* at 429, 645 A.2d at 406.

We recognize that DPW's failure to set forth a clear attorney-fee reimbursement policy and its incorrect advice on appeals could be seen as a form of concealment because the court charged DPW with failing "to educate the public" by not publishing a statement of policy, *id.* at 426, 645

A.2d at 405, and with "creat[ing] and continu[ing] the confusion that resulted in this case," *id.* at 429, 645 A.2d at 406, but we believe other aspects of the case make DPW's failure to act sufficient ground for estoppel. For instance, the court did not reject DPW's discovery-rule argument that a resident could know that she had not been reimbursed for attorney's fees when she was sent her payment from DPW, which would normally trigger the running of the statute. Instead, it decided that even if true, DPW's conduct tolled the statute because it created a "[dis]incentive" to seek the fees, *id.* at 426, 645 A.2d at 405, not that it deprived the residents of knowledge necessary to know of their claim. Further, the absence of a policy and the refusal to hold hearings on reimbursement of attorney's fees represent failures to act.

We therefore conclude that we can rely on equitable estoppel to toll the limitations period here for the three months or so that Clark failed to fill out the BP–8. Clark had the responsibility to fill out the BP–8. He did not have to act immediately, but his failure to act for almost three months, even without any bad intention, requires tolling, just as it did in *Simmons.*

As further support for tolling the statute, we note that Pennsylvania courts use a common-sense approach to interpreting a statute of limitations. *See Ayers v. Morgan,* 397 Pa. 282, 285, 154 A.2d 788, 789 (1959). We think that a Pennsylvania court confronted by the circumstances in this case would conclude that common sense requires tolling of the limitations period when a litigant's right to file suit depends on the timely conduct of the opposing party's agent in assisting in the exhaustion of mandatory administrative remedies. For this reason, the defendants' citation to *Robbins, supra,* is inapposite. In *Robbins,* the Pennsylvania Superior Court held that a legal malpractice action for drafting an inaccurate pension plan was not tolled while remedies were exhausted before the IRS seeking approval of the plan. Unlike here, the IRS administrative procedures were not mandatory.

We also conclude that statutory tolling requires us to exclude the time between November 13, 2001, and June 11, 2002, which was consumed while Plaintiff pursued the administrative process. The defendants have overlooked 42 Pa.C.S. § 5535(b), which provides: "[w]here the commencement of a civil action or proceeding has been stayed by a court or by statutory prohibition, the duration of the stay is not a part of the time within which the action or proceeding must be commenced." Here, section 1997e(a) prevented Plaintiff from commencing his civil rights action until he had exhausted administrative remedies, *see Booth, supra,* 532 U.S. 731, 739, 121 S.Ct. 1819, 149 L.Ed.2d 958 (exhaustion is mandatory), and courts will dismiss actions, as we did with the first lawsuit, where the plaintiff-prisoner did not exhaust his remedies. Hence, pursuant to section 5535(b), the statute of limitations is tolled for the time between November 13, 2001, and June 11, 2002. *See Johnson v. Rivera,* 272 F.3d 519 (7th Cir.2001)(limitations period on section 1983 action was tolled while section 1997e(a) required the plaintiff to exhaust administrative remedies, based on an Illinois statute that excludes the time the action is "stayed" by a "statutory prohibition").[6]

---

**6.** Reaching the same result, other courts rely on judicial tolling rules. *Harris v. Hegmann,* 198 F.3d 153, 158–59 (5th Cir.1999)(limitations period on section 1983 action was tolled while section 1997e(a) required the plaintiff to exhaust administrative remedies, based on a Louisiana judicial rule that excludes from the limitations period the time a plaintiff "is legally unable to act"). *See also Brown v. Morgan,* 209 F.3d 595 (6th Cir.2000); *Clifford v. Gibbs,* 298 F.3d 328 (5th Cir.2002), *citing*

Based on the foregoing, Plaintiff's limitations deadline was January 6, 2003, calculated as follows. Equitable estoppel tolls the period between August 5, 2001, and November 13, 2001, a period of 100 days. *Cf.* 1 Pa.C.S. § 1908 (for periods of time mentioned in a statute, the first day of the period shall be excluded and the last one included). Statutory tolling tolls the period between November 13, 2001, and June 11, 2002, a period of 210 days. *Id.* Thus, the total number of days the limitations period was tolled was 310 days. These days are added to March 1, 2002, the date upon which the limitations period would have expired absent tolling, bringing us to January 5, 2003, but because that was a Sunday, the deadline was the next day, January 6, 2003. *Id.* (the last day of the period is excluded if it would fall on a Sunday). Plaintiff filed his complaint on December 10, 2002, some three weeks earlier. It was therefore timely and the defendants' motion must be denied.[7]

We will issue an appropriate order.

## *ORDER*

AND NOW, this 9th day of February, 2004, it is ordered that the defendants' motion (doc. 21) to dismiss, based on the statute of limitations, and converted to a motion for summary judgment, is denied.

*Wright v. Hollingsworth,* 260 F.3d 357 (5th Cir.2001).

**7.** We note in passing that, as the defendants point out, the statute of limitations was not tolled while Plaintiff's first lawsuit was pending because it was dismissed without prejudice. *See Jones v. Morton,* 195 F.3d 153, 160 (3d Cir.1999); *Cardio–Medical Assocs. v. Crozier–Chester Med. Ctr.,* 721 F.2d 68, 77 (3d Cir.1983).